Ford Motor Company, Appellant, *v.* Unemployment Compensation Board.

Argued October 6, 1950. Before RHODES, P. J., HIRT, RENO, ARNOLD and GUNTHER, JJ. (DITHRICH and ROSS, JJ., absent).

*Harold E. Kohn,* with him *James A. Sutton,* for appellant.

*William L. Hammond,* Special Deputy Attorney General, with him *Richard H. Wagner,* Associate Counsel and *Charles J. Margiotti,* Attorney General, for appellee.

*M. H. Goldstein,* for intervenor, appellee.

OPINION BY ARNOLD, J., March 12, 1951:

In these unemployment compensation cases four claimants each received an award from the Unemployment Compensation Board of Review and the employer, Ford Motor Company, took separate appeals.

Ford Motor Company is a Delaware corporation engaged in the manufacture of motor vehicles and its principal plant is at Dearborn, Michigan, where motor vehicle parts are manufactured and are sent to various assembly plants located throughout the United States.

A strike began at the Dearborn plant on May 8, 1949. It was voted by the United Automobile, Aircraft and Agricultural Implement Workers of America (UAW-CIO) of that plant, and approved by the International Union. The dispute at Dearborn concerned the pacing of conveyor belts carrying manufactured parts. One of the assembly plants of Ford Motor Company is located at Chester, Pennsylvania, and it relied on the Dearborn plant for about 50% of the parts used. Due to the strike of the employes at Dearborn and the consequent failure of a supply of parts from that plant, the Chester plant partially shut down from May 10, 1949, to June 8, 1949. During this period a number of the employes of the Chester plant continued to work on maintenance or in the export division, but the present appellees were out of work.

Most of the questions raised on these appeals are factual, and, being based on competent, credible evidence, the findings of the board are determinative. On

such evidence the board found that there was no labor dispute at the Chester plant; that the dispute at Dearborn did not involve wages, hours or working conditions at Chester; that the employes of the Chester plant did not call, approve, authorize or ratify the Michigan strike; and that there was no dispute between the members of the Chester local union and the Company.[1]

On the same quality of evidence the board found that UAW-CIO is divided into self-governing unions constituting separate units; that a strike may be declared only after a vote of the local union approved by the international union; and that the latter cannot call a strike without the prior vote of the local.

Section 402(d) of the Unemployment Compensation Law of 1936, P. L. 2897, as amended, 43 PS §802 (d), denies unemployment compensation if the unemployment was "due to a stoppage of work, which exists because of a labor dispute . . . *at* the factory, establishment or other premises at which he . . . [the employe] was last employed." (Italics supplied). The appellant contends that all its various plants scattered throughout the United States from one seaboard to the other are so strongly integrated that they are one establishment, and that a labor dispute existing in any one of some 23 of its units occurs at the establishment where claimants were last employed. With this we do not agree. The members of the Chester local union cannot be held responsible for the shut-down caused by the

---

[1] "8. There was no dispute between Local Union No. 918 or the members thereof and the company and the labor dispute in question did not involve the wages, hours, working conditions or other terms of employment of any employes in the Chester Plant.

"9. The employes of the Chester Plant did not call, approve, authorize or ratify the strike at the Rouge Plant, nor did they authorize the calling or approval of the strike in Michigan."

Michigan strike, in which the Chester employes had no part or interest, and were without power to prevent. The fact that the Dearborn plant and the Chester plant were owned by the same corporation makes no difference.

There is no legislative definition of the phrase "at the factory, establishment or other premises . . . ," nor has such phrase been construed by our Courts.

Webster's New International Dictionary, 2d ed. defines "factory" as ". . . [a] place where workmen are employed in fabricating goods, wares or utensils"; and defines the word "premises" as "a piece of land or real estate; . . . sometimes a building or buildings on land." Under the doctrine of noscitur a sociis the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it.[2] See 28 Words and Phrases, 766. Any alleged uncertainty in meaning of the word "establishment" we resolve by the words associated with it, i.e., "factory" and "premises."

Section 402 (d) refers to "a labor dispute *at* the factory, establishment or other premises." (Italics supplied). There was no labor dispute *at* the Chester factory. There was no physical connection between the Dearborn plant and the Chester plant; the latter handled its own employes, and these had no part whatsoever in the Michigan strike. In addition, the Dearborn strike was of no possible benefit to the Chester employes; on the contrary it was to their positive detriment, requiring high wages to be exchanged for low unemployment compensation. The fact that the appellant continued to employ a number of the members of the Chester local during the period of the Dearborn strike is additional evidence that there was no strike at the Chester local. The Dearborn plant and the

---

[2] Thus the word is known by the company it keeps.

Chester plant are separated by some 600 miles and each constitutes a separate "factory," and unless the employes of one of these factories take part in the strike at the other, they are not deprived of the compensation benefits of the Act, where the shortage of supplies causes the shut-down. In a very able opinion by Mr. Justice HEHER (upon which we have largely drawn herein), the New Jersey Supreme Court construed the identical statutory provision in *Ford Motor Company v. New Jersey Department of Labor and Industry,* 5 N. J. 494, 76 A. 2d 256.

The present cases are not ruled by *Prentice v. Unemployment Compensation Board of Review et al.,* 161 Pa. Superior Ct. 630, 56 A. 2d 295, for here the international union did *not* represent nor perform any acts for the local union at the Chester plant, nor did the employes at the Chester plant acquiesce in or ratify the action of the international union approving the Dearborn strike. In addition, there is no finding in the present cases that the international union acted as agent for the Chester local union. In the Prentice case there was such an agency.

Decisions affirmed.