## First National Bank, Altoona v. Brown

*Alexander A. Notopoulos*, for plaintiff.

*Eugene J. Ianuzzi*, for exceptant.

KLEPSER, P. J., October 26, 1961.—This matter is before us on exceptions filed by the Commonwealth, Department of Revenue, Bureau of Sales and Use Tax to the sheriff's schedule of distribution of proceeds

from the sale of defendants' real estate upon mortgage foreclosure proceedings.

Plaintiff bank, mortgagee, granted a loan to defendants secured by a mortgage dated November 30, 1956, and duly recorded on January 7, 1957, in the office of the recorder of deeds in and for Blair County. Subsequently, between July 6, 1959, and December 29, 1960, exceptant filed six liens against defendants in the office of the prothonotary in and for Blair County, all of them for selective sales and use tax delinquencies occurring during 1957 and 1958. On December 6, 1960, following the filing of all save one of these tax liens, plaintiff, defendants-mortgagors being in default on their obligation, confessed judgment on the bond accompanying the mortgage and instituted foreclosure proceedings which resulted in the dispute at hand. There being insufficient proceeds realized from the sale to satisfy all claimants thereto, the issue resolves itself into a question of whether liens for unpaid Pennsylvania Selective Sales and Use Taxes, filed several years subsequent to the recording of the mortgage upon which the judicial sale was based, take priority over payment to the mortgagee. We are disposed to hold that they do not.

There is no room for doubt that the Commonwealth, as a sovereign creditor, has the power and right to make its claims superior to those of other creditors. This it clearly elected to do in the area of state taxation by passage of The Fiscal Code, Act of April 9, 1929, P. L. 343, art. XIV, sec. 1401, as amended, 72 PS §1401, which provides that:

"All State taxes imposed under the authority of any law of this Commonwealth, now existing or that may hereafter be enacted, . . . assessed or determined against any corporation, association, or person, including interest thereupon, shall be a first lien upon the

franchises and property, both real and personal, of such corporation, association, or person . . . and whenever the franchises or property of a corporation, association, or person shall be sold at a judicial sale, all taxes . . . due the Commonwealth shall first be allowed and paid out of the proceeds of such sale before any judgment, mortgage, or any other claim or lien against such corporation, association, or person. . . ."

It is also true that policy arguments grounded upon the commercial desirability of mortgage loans and the reliance placed by potential mortgagees on record examinations revealing unencumbered titles are never to be judicially weighed in the face of such legislative mandate as is contained in the above statute, notwithstanding any persuasiveness or merit in positions to the contrary. As was stated in the case of Commonwealth v. My Pop's Root Beer Company, 84 D. & C. 386, where the court held Commonwealth liens for outstanding soft drink taxes against a mortgagor entitled to priority over a mortgage duly-recorded even prior to the enactment of the taxing act, at pages 388-89:

"The mortgagee argues that although the statute [The Fiscal Code] says *all* taxes shall be paid on judicial sale before *any* mortgage, this should not be literally interpreted since it results, in a case such as this, in great hardship for the mortgagee. Our attention is drawn to the Cigarette Tax Act of June 14, 1935, P.L. 341; the Malt Beverage Tax Act of April 5, 1933, P.L. 284, and the Spiritous and Vinous Liquor Tax Act of December 5, 1933, P. L. (Spec. Sess.) 38, and it is argued that there was, in each instance, a specific exemption from section 1401 of The Fiscal Code by section 1207 of the code, evidently because of the hardship upon lien holders if the Act of 1929 were applied. From this it is argued that the court should construe a

similar exception in the case of the soft drinks tax. This argument should have been presented to the legislature and must fall on deaf ears in a judicial proceeding . . . the legislature has assumed control of this area and will itself prescribe any limits which it desires to the application of section 1401 of The Fiscal Code." (Italics the court's).

The courts cannot usurp a legislative function, but rather must look to the statutes passed by our state legislature regarding the tax lien rights of the Commonwealth.

It is, however, likewise established that the Commonwealth, through the legislature, may choose to subordinate its liens to those of private creditors. See Petition of City of Pittsburgh, 376 Pa. 447, 103 A. 2d 721 (1954). The Fiscal Code provision hereinbefore-quoted is a general enactment to which exceptions may be set forth, not only elsewhere in the code itself, but also by subsequent legislation treating more specifically the subject-matter directly involved in a given proceeding. The Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, secs. 63 and 66, 46 PS §§563 and 566, provides as follows:

"Whenever the provisions of two or more laws passed at different sessions of the Legislature are irreconcilable, the law latest in date of final enactment shall prevail.

"Whenever a general provision in a law shall be in conflict with a special provision in . . . another law . . . If the conflict between the two provisions be irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the Legislature that such general provision shall prevail."

It is for this reason that we must examine the provisions of the Selective Sales and Use Tax Act, as

amended, passed into law more than six years following the effective date of the Fiscal Code reenactment, for possible controlling authority.

The pertinent provisions of this Act of March 6, 1956, P. L. (1955) 1228, art. V, sec. 548, as amended, 72 PS §3403-548, relating to unpaid sales and use taxes are:

"(a) Lien imposed. If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, addition or penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the Commonwealth upon the property, both real and personal, of such person *but only after same has been entered and docketed of record by the prothonotary* of the county where such is situated . . . which lien shall be indexed as judgments are now indexed. . . .

"(b) Priority and Effect of Lien on Judicial Sales. All such liens shall have priority to, and be fully paid and satisfied out of, the judicial sale before any other obligation, judgment, claim, lien or estate with which the property may *subsequently* become charged or for which it may *subsequently* become liable; *subject, however, to mortgage or other liens existing and duly recorded at the time the tax lien is recorded,* save and except the cost of sale and of the writ upon which it is made. There shall be no inquisition or condemnation upon any judicial sale of real estate made by the Commonwealth pursuant to the provisions hereof. The lien of the taxes, interest and penalties, shall continue for five years *from the date of entry,* and may be revived and continued in the manner now or hereafter provided for the renewal of judgments . . .

"(d) Priority of Tax. *Except as hereinbefore provided* in the distribution, voluntary or compulsory, in receivership, bankruptcy or otherwise, of the property

or estate of any person, all taxes imposed by this act which are due and unpaid . . . *shall be paid from the first money available for distribution in priority to all other claims or liens*, except insofar as the laws of the United States may give a prior claim to the Federal government. . . ." (Italics supplied.)

Admittedly, were the above provisions ambiguous our interpretation must favor the position of the Commonwealth, for a divestiture of sovereign rights is accomplished only in specific, express and clear terms or by necessary implication: Baker v. Kirschnek, 317 Pa. 225, 176 Atl. 489, (1935). Otherwise should we revert to the language of The Fiscal Code, which undisputedly grants the Commonwealth priority. But we are of the firm opinion that the language employed by our legislature in the Selective Sales and Use Tax Act is of sufficient clarity and not equivocal.

Plaintiff contends that section 548 (b) applies to the matter at hand, while the Commonwealth counters with the argument that section 548 (d) governs because subsection (b) controls only those situations where the judicial sale takes place on the Commonwealth's own lien. The latter argument is not persuasive because it produces the following inconsistency: it renders a prior recorded mortgage superior when the sale occurs on the Commonwealth's lien, yet would make such a mortgage inferior when the sale takes place on the mortgage itself. To us, such an illogical construction cannot be ascribed to legislative intent. The Statutory Construction Act, art. IV, sec. 52, 46 PS §552, provides that:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd . . . or unreasonable."

The mere fact that a statute could or should have been worded differently does not necessarily stamp it with the mark of ambiguity.

The Statutory Construction Act, art. IV, sec. 54, 46 PS §554, provides that:

". . . The headings prefixed to . . . sections and other subdivisions of a law shall not be construed to control *but may be used to aid in the construction thereof*." (Italics supplied).

Subsection (b) deals expressly with "Priority and Effect of Lien on Judicial Sales". This is not exclusive language limited or confined to a judicial sale on the Commonwealth lien, but rather a broad heading covering judicial sales in general. Had the legislature contemplated a narrow application and construction of this subsection it would have been an easy matter so to specify. Where the meaning of a statute is plain and sensible, it cannot be changed by adding words thereto: Grayson v. Richard Aiman, Inc., 252 Pa. 461, 97 Atl. 695 (1916) ; Putney v. Abington Township, 70 Montg. 102 (affirmed 176 Pa. Superior Ct. 463, 108 A. 2d 134 (1954). Nor can we envision "the judicial sale" as language restricted to such sales on Commonwealth liens alone. It is a well-settled rule that construction of a statute is not permissible which will delete or disregard words and phrases or relegate them to a position of mere surplusage, unless no other construction is reasonably possible: City of Allentown v. Pennsylvania Public Utility Commission, 173 Pa. Superior Ct. 219, 96 A. 2d 157 (1953) ; West v. Lysle, 302 Pa. 147, 153 Atl. 131 (1931). The sentence immediately following the one containing the last above-quoted words provides that "There shall be no inquisition or condemnation upon *any judicial sale* of real estate *made by the Commonwealth* pursuant to the provisions hereof" (Italics supplied). Now if the

"judicial sale" be interpreted to mean only judicial sales on Commonwealth liens, this subsequent sentence could well have read "There shall be no inquisition or condemnation upon the judicial sale (or 'upon such judicial sales')". The inescapable observation is that this construction renders at least the words "made by the Commonwealth" superfluous and unnecessary, mere surplusage; it would strain the statutory language to the point of deleting and disregarding these words, or leaving them without import.

Even were this court to regard the meaning of these phrases as unclear, under the doctrine of noscitur a sociis the significance of doubtful words is determined by reference to those with which they are associated: Ford Motor Company v. Unemployment Compensation Board of Review, 79 A. 2d 121, 168 Pa. Superior Ct. 446 (1951). By using the words "the judicial sale" preceding the phrase "any judicial sale of real estate made by the Commonwealth", it is manifest that the latter is employed in a restricted sense, by explanation treating only some types, or a certain type, of judicial sale previously described. Thus the latter is to be distinguished from the former and is considerably more confined in scope.

We have had no legislative or administrative pronouncements to serve as a guide in resolving this issue. We have, however, had the benefit of reference to the comments of the Real Property Section of the Pennsylvania Bar Association, chaired by the Honorable Mark E. Lefever. In suggesting an amendment to the Real Estate Transfer Tax Act in the Pennsylvania Bar Association Quarterly, Vol. XXXII (January, 1961), the section states at pp. 122-23:

"Under the present [Realty Transfer Tax] act, there being no express provision for liens, the Commonwealth would apparently be in a position to assert

liens for said tax, if unpaid, under Section 1401 of the Fiscal Code, which liens would have priority over prior mortgages, judgments and other encumbrances, excepting only mortgages given by predecessors in title to the tax delinquent's property. . . . This result would seem to be manifestly unfair in respect to mortgages created by the purchaser of the real estate at the time of the taxable transfer, or thereafter, it being impossible to ascertain at such times what claims for additional tax may be subsequently asserted by the Commonwealth.

"The purpose of the proposed amendment, *consistently with other state tax* and contribution *statutes, such as the selective sales and use tax* (72 PS 3403) . . . *is to limit the tax lien priority so that it will not impair the rights of mortgagees, judgment creditors and others who have acquired their interests in good faith before the filing of any lien by the Commonwealth.*" (Italics supplied).

We would point out that the significance which we attach to the above comment is not based upon the stated policy argument of fairness to mortgagees or judgment creditors whose rights arose first in time, but rather upon the obvious opinion of this section that, perhaps responding to this reasoning, the legislature has in fact and act seen fit to protect and give priority to such preceding liens in the Selective Sales and Use Tax Act. There can be no doubt that this comment is directed to the express provisions of section 549 (a) and (b) of this act.

Were there appellate case authority on this question we would of course be governed thereby. See 46 PS §552 (4). There are but two lower court cases, very recent ones decided in July of this year, dealing with this general problem, and both of which would disagree with the decision as reached by this court. In

Tamaqua National Bank v. Kelly's Supper Club, Inc., no. 2204 October term 1960 (C.P., Luzerne Co.), however, the opinion was based upon the general supremacy of Commonwealth tax liens as set forth in The Fiscal Code and the law regarding municipal claims, 53 PS §7102, and an apparent assumption that section 548 (d) governed, there being no discussion whatsoever of the import of section 548 (b) of the Selective Sales and Use Tax Act or the interrelationship between these two subsections. Moreover, the plaintiff-mortgagee was not a claimant to the foreclosure sale proceeds. In Bridgeport National Bank v. McCausland Motors Inc., no. 70 July term 1960 (C.P., Chester Co.), Judge Harvey, in a detailed and comprehensive opinion for the court en banc, held that liens of the Bureau of Sales and Use Taxes had priority out of the proceeds of a judicial sale upon mortgage foreclosure over both the liens of the prior-recorded mortgage and a prior-recorded judgment. We would concur with his conclusion that section 548 (d) does not control the issue because that subsection treats only receivership, bankruptcy and like cases under the doctrine of ejusdem generis, not unrelated judicial sales: See Butler Fair and Agricultural Association v. School District of the City of Butler, 389 Pa. 169, 132 A. 2d 214, (1957); In Re Marberger's Estate, 37 D. & C. 328, 56 Montg. 30 (1939). But we again cannot agree that The Fiscal Code provision controls. We would emphasize that in this case the decision was a narrow 2-1 majority opinion, Judge Lichtenfeld dissenting.

We find that section 548 (b) of the Selective Sales and Use Tax supersedes The Fiscal Code in this specific area of governmental taxation, and that it is sufficiently clear and definite as to include coverage of any judicial sale. And since it further provides that Commonwealth sales and use tax liens are subordinate not only to prior-recorded mortgages, but also "subject,

however, to . . . other liens existing and duly recorded at the time the tax lien is recorded", we find no merit in the remaining objections and exceptions of the bureau to the priority accorded other State and municipal claims in the sheriff's schedule of distribution. The Selective Sales and Use Tax Act has also superseded the earlier law on municipal claims, Act of March 21, 1945, P.L. 47 sec. 1, 53 PS §7102, which had subordinated township and other municipal liens generally "to the lien of taxes imposed by the Commonwealth".

This court feels that section 548 (a) can be given its full effect as intended by the legislature only by such a construction of section 548 (b). Subsection (a) is a broad and general provision making any lien for delinquent sales and use taxes effective as such only upon due entry and recordation. There is absolutely nothing either expressly or implicitly contained in subsection (a) with respect to judicial sales.

And now, October 26, 1961, the exceptions of the Commonwealth, Department of Revenue, Bureau of Sales and Use Tax, to the sheriff's schedule of distribution are hereby dismissed and the sheriff of Blair County is directed to make distribution of the proceeds of the sale in question in accordance therewith.