## Carlton v. Perkiomen Township

*John F. Gaffney,* for plaintiffs.

*Philip R. Detwiler,* for defendants.

HONEYMAN, J., June 25, 1971.—Plaintiffs, residents and taxpayers of defendant township, seek to enjoin the consummation of a sale of real estate at Mayberry Road and Township Line Road in Perkiomen Township which defendant township, by its board of supervisors (all three of whom individually are named defendants) has agreed to purchase from the four Piotrowski-defendants. Defendant has filed an answer to the complaint, and testimony has been taken before the undersigned judge sitting as chancellor.

This controversy revolves about four main issues: (1) Did the township supervisors exceed their authority in negotiating the purchase of the tract in question without resort to an ordinance?; (2) assuming, arguendo, that the township supervisors did act properly from a procedural standpoint, can the court interfere with their administrative judgment in deciding to purchase the tract in question?; (3) was there a conflict of interest from the participation of Supervisor Redding and Township Engineer John D. Fridy in the transaction?; (4) have the township supervisors disqualified themselves from acting upon the application for subdivision approval of the tract of which the subject premises are presently a part by agreeing to "co-operate in every way in completing"

the subdivision plans, which approval is a necessary prerequisite to final consummation of the agreement of sale?

## FINDINGS OF FACT

1. Sometime prior to December 14, 1970, a need arose in Perkiomen Township for additional housing of municipal operations and a search was begun for suitable property within the township.

2. At a public meeting on December 30, 1970, the township supervisors unanimously passed a motion to enter into an agreement of sale for the subject premises and to fund such purchase by setting aside money previously budgeted in 1970 for such purchase, with the balance of the cost of acquisition to be budgeted in 1971. The agreed-upon purchase price for the tract and the improvements thereon was $18,000.

3. The agreement was dated January 15, 1971, but was not completely executed by all parties until February 2, 1971. It provided for an $1,800 down payment, liquidated damages clause at signing; which was paid by township check on February 2, 1971; $8,200 at settlement and $8,000 on or before June 1, 1971, the last sum to be secured by a judgment note executed on behalf of the township, but to be satisfied out of 1971 tax revenues. The agreement further provided for the township to cooperate in every way in the completing of the required subdivision plan, but the primary obligation for preparation and obtaining final approval of such plan for the larger tract, of which the subject premises were a part, was expressly placed upon the sellers (Piotrowskis). Therefore, the agreement would be null and void in the event of failure to prepare or obtain approval of such plan and the down money paid by the township

would be returned and all its obligations under the agreement cease.

4. No ordinance was enacted by the supervisors authorizing this property acquisition.

5. Charles Martino, a qualified expert in the field of real estate appraisal, inspected the tract in question and placed a total value of $23,000 on it; allocating $9,600 to the barn and other out buildings and approximately $2,000 per acre to the land.

6. The proofs of the plaintiffs fell woefully short of the quantum required for the chancellor to override the executive judgment of the township supervisors.

7. Robert Granoff, a supervisor of Perkiomen Township, who voted in favor of the acquisition, will not personally benefit in any way from the township's purchase of the tract, nor will John D. Fridy, the township engineer.

## DISCUSSION

Plaintiffs contend that the township supervisors have acted unlawfully in acquiring the tract in dispute because they failed to act by way of ordinance. Section 701 of Article VII of the Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §65701, in enumerating the powers under II states that "Any township of the second class may—'Purchase, acquire by gift or otherwise hold, lease, let and convey such real . . . property as shall be deemed to be for the best interests of the township . . .'" No particular procedure is specified when undertaking to so act under this section. Section 1702 of article XVII of the code, 53 PS §66702, refers to procurement of property for "town hall" purposes and does not specify any particular procedure, and furthermore, authorizes the supervisors of the township to borrow money for the purpose of "procuring a lot of ground and erecting a town hall."

Plaintiffs rely upon section 1704 of the code, 53 PS §66704, which is entitled "Appropriation of Property" and Section 1705, 53 PS §66705, entitled "Resolution of Supervisors." Looking at these sections in their original context as published in Laws of Pennsylvania, vol. 11, 1947, it clearly appears that these sections apply exclusively to condemnations.

The key words in these sections appear in section 1705 referring to "Whenever the supervisors desire to *acquire, enter upon, take, use,* and *appropriate* private property or roads for public buildings, they shall declare such intention by an ordiance." (Italics supplied.) The court feels that defendant township's interpretation of this section is the one most consistent with logic. It is abundantly clear that the only emphasized word above that does not refer to an exercise of the power of eminent domain is the word "acquire." In order to determine the statutory meaning of an ambiguous term one should turn to case law on point or statutory construction aids rather than a mere dictionary definition of the isolated word. In this context we see that the doctrine of "noscitur ex sociis" can be of some assistance. By referring to the other words associated with the doubtful word, we can ascertain its statutory meaning. The chancellor concludes that the word "acquire" as used in section 1705 clearly refers to condemnation of private property only. Ford Motor Company vs. Unemployment Compensation Board, 168 Pa. Superior Ct. 446 (1951), adopts this type of technique for statutory interpretation.

The unsuitability of the tract for the township's desired purposes was strenuously sought to be established by plaintiffs at the hearing. The law in this regard is not subject to dispute. Review of discretionary acts of an administrative body are not subject to control of the courts absent a manifest abuse of that

discretion: Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954). A review of the proceedings in no way reveals that plaintiffs have met their burden of proving a manifest abuse of discretion by the supervisors. Mere disapproval of the township's plans, or disagreement therewith, will not suffice.

Also, plaintiffs have failed to meet their burden of proof with regard to their charge of conflict of interest. The uncontradicted testimony of Messrs. Redding, Granoff and Fridy on behalf of defendant proved that the alleged benefit in the form of prospective sanitary sewer lines to service the adjacent properties owned by Redding and Fridy was speculative at best, and as adjacent owners to the tract in question, they would stand in no better position after the purchase than before. The law requires affirmative proof by the party asserting the conflict, that the public official stands to directly benefit in a "pecuniary or proprietary" manner from his acts. "In short, [the] interest [received] must be reduced to a financial one coming directly to the public officer. . .": Wilson v. New Castle City, 301 Pa. 358 (1930). There was no showing that either Mr. Redding or Mr. Fridy will, in any way, directly benefit from this purchase by the township.

The fourth and final issue raised by plaintiffs, at first blush, gave the chancellor concern. It certainly would have been more desirable to have the subdivision plan of the larger tract of defendants Piotrowski finally approved before the township entered into this transaction. However, the genuine practicalities of the situation may well have dictated the procedure actually followed. The fact still remains that the supervisors, in the posture of the

matter, could hardly possess an unfettered and objective judgment in passing upon the subdivision plan. Nevertheless, the supervisors certainly cannot, in a cavalier manner, disregard the provisions of the Municipalities Planning Code nor the provisions of the township subdivision control ordinance, since their decision will be subject to judicial scrutiny under the appeal provisions of the code in section 512, 53 PS §10512. Upon consideration of all factors involved, this one possibly ill-advised action by supervisors is not sufficient to overturn their otherwise validly exercised judgment in the matter.

## CONCLUSIONS OF LAW

1. Equity has jurisdiction over the cause and the parties.

2. Section 1705 of the Second Class Township Code applies only to condemnations.

3. Sections 701 and 1702 authorize the township supervisors to negotiate the purchase of private property for use by the township.

4. No ordinance declaring the intent to purchase the tract was necessary.

5. Plaintiffs failed to show any conflict of interest in any supervisor, township officer or employe in the authorization of the purchase by the supervisors.

6. Plaintiffs failed to meet their burden of proof to show a manifest abuse of discretion by the municipal officers in choosing the site in question for housing and servicing the municipal functions of the township.

7. The agreement of sale of January 15, 1971, is entitled to full effect despite the township's agreement to "co-operate in every way in completing" the requisite subdivision plan.

### DECREE NISI

And now, June 25, 1971, it is ordered, adjudged and decreed that:

1. Plaintiffs have no legally enforceable rights to prevent the purchase of the tract in question by defendant township and, therefore, their complaint is dismissed.

2. Costs shall be borne by plaintiffs.

3. This decree shall become the final decree unless exceptions are filed within 20 days.