OPINION BY SENIOR JUDGE PELLEGRINI
*1063 The Commonwealth, through its Attorney General, brought an action as parens patriae against New Foundations, Inc. (New Foundations), Firetree, Ltd. (Firetree), and Orange Stones Company (Orange Stone) (collectively, Charities). Each was created as a charitable nonprofit with different but related charitable purposes. New Foundations was incorporated to provide services to families and children, with special emphasis on providing services to fragile infants and children. Firetree was incorporated to provide food and shelter to disadvantaged people. Orange Stone was incorporated to provide housing, care and treatment to halfway house residents. Each provides those services pursuant to contracts with federal, state and local government agencies.
Also named were Allen Ertel, Catherine Ertel, Amy Ertel, Edward Ertel and William Brown (collectively, Individual Defendants) who currently serve or have served as officers and directors of the Charities. The Commonwealth contends that the Individual Defendants breached their fiduciary duties to the Charities by engaging in a pattern of improper related-party transactions with the Charities benefiting themselves or for-profit entities that they control at the expense of the Charities and the public. Those improper-related transactions alleged are improper payments, co-mingling assets, diverting resources, and usurping business and investment opportunities for their personal benefit or for-profit entities, including, but not limited to, Treefire, Alcat Brown, BANCA and/or Park Place, which they control.
The Commonwealth sought restoration, return and repayment of all diverted assets by the Individual Defendants whether those assets were diverted to them or one of their for-profit entities. It also asks for the immediate transfer of all assets, in whatever form, held by or in the names of Individual Defendants' for-profit entities, and to impose fines on Individual Defendants for violating the Solicitation of Funds for Charitable Purposes Act (Act).[1] Regarding the Charities, the Commonwealth seeks an accounting and removal of the Charities' Board of Directors and the appointment of a new Board of Directors.
The Commonwealth has filed a Motion for Summary Judgment which is primarily based on its claim of illegal self-dealing by the Individual Defendants with the Charities. It contends that because of that self-dealing, the Individual Defendants should be surcharged and held jointly and severally liable for a total of $25,530,742 based on approximately 26 transactions, which they contend were illegal self-dealing.
1. $4,085,000 which passed from all three Charities to the Individual Defendants through Treefire;
2. $1,000,000 which passed from Firetree to WCB (William Brown);
3. $700,000 for an April 5, 2011 check that Allen Ertel wrote to himself from New Foundations' account
4. $300,000 for an April 5, 2011 check that Allen Ertel wrote to himself from Firetree's account;
5. $625,000 for 401(k) distributions from Firetree to the Individual Defendants;
6. $520,000 for unnecessary interest paid to Individual Defendant Allen Ertel on his "officer loan";
*1064 7. $163,680 for unnecessary interest paid to Individual Defendant Catherine Ertel on her "special grant";
8. $1,824,287 in write-offs due from affiliates;
9. $655,799 for the Treefire investment and write-off;
10. $403,232 for the Conewego Harrisburg write-off;
11. $90,172 for the Outer Dauphin, LLC write-off;
12. $63,367 for the BANCA write-off;
13. $19,200 for the RegScan write-off;
14. $184,551 for the underpayment of the Individual Defendants' loans from Firetree;
15. $744,199 in unpaid loans due to New Foundations from the Individual Defendants-related party for-profit entities;
16. $418,885 for the unpaid loan from Firetree to Edward Ertel;
17. $115,876 in unpaid loans due to Orange Stone from the Individual Defendants-related party for-profit entities;
18. $384,000 for airplane payments made by the Charities to Alcat Brown;
19. $4,000,000 for rental payments made by the Charities to Park Place and BANCA on properties the charities could have purchased in their own right;
20. $271,000 for rental payments made to BANCA by Firetree and Orange Stone for a property owned by Firetree;
21. $19,822 for Firetree's payment of Park Place's real estate taxes;
22. $100,587 in proceeds for the Individual Defendants' sale of Swathmore Lane which was financed by Firetree;
23. $1,000,000 for the transfer of Firetree's assets to Firetree Place;
24. $6,696,653.02 for the purported loan repayment through the transfer of stock which should be rejected and replaced with a cash payment in that amount.
25. $10,000 for violations of the Act; and
26. $1,135,432 for the Commonwealth's costs of investigation.
The Commonwealth requested that summary judgment be granted and the following order be entered:
a. The Individual Defendants failed to maintain accurate books and records in violation of 15 Pa. C.S. § 5508, 5793(a) ;
b. Individual Defendants engaged in unlawful acts of self-dealing and the diversion of charitable assets and have breached their fiduciary duties;
c. Individual Defendants should be immediately removed from their positions as officers and directors of the Charities;
d. Schedule a hearing to appoint a receiver to wrap up the affairs of the Charities;
e. Enter judgment in favor of the Commonwealth of Pennsylvania, Office of Attorney General, and against the Individual Defendants: William Brown, individually, Estate of Allen Ertel, individually; Catherine Ertel, individually; Edward Ertel, individually; and Amy Ertel, individually, in the amount of $25,520,742; and
f. Enter judgment in the amount of $10,000 against Firetree for violations of the Act.
The Charities and Individual Defendants have filed a Motion for Partial Summary Judgment contending that the evidence shows that they are upholding their mission and serving the public good in accordance with typical nonprofit practices and in compliance with Pennsylvania law. They contend that the Commonwealth has failed to identify any improper transactions engaged in by the Charities because the Individual Defendants' compensation, including *1065 bonuses, retirement plan funds, health plan costs and other payments were fair and reasonable. They also contend that the lease payments made to related for-profits were also fair and reasonable. Regarding loans the Charities made to the Individual Defendants, they claim that the Commonwealth has offered no evidence of any violations of Pennsylvania law in connection with loans the Charities made to related for-profit entities and Individual Defendants. They also note that all such loans have been repaid and for the past four years, the Charities no longer permit such loans. They also contend that some of the claims for relief are out of time. As to the Commonwealth's claims for accounting violations of the Act, they allege that the Charities have already provided their books and records to the Commonwealth for inspection and they have never solicited donations.
While styled as a Motion for Partial Summary Relief, the Charities and Individual Defendants have not identified what would remain if their Motion were granted since they are asking for what seems to be all counts of the Complaint be dismissed.
At oral argument on the cross-motions, it became apparent that if the issue was whether the transactions in question were illegal and self-dealing under the Nonprofit Corporation Law (Law),[2] then neither summary judgment motion could be granted because they involved disputed questions of fact.[3] (See II, infra. )
The Commonwealth, however, at oral argument, contended that transactions were per se illegal and self-dealing because the officers and the Board of Directors of a nonprofit charity have a fiduciary obligation-the same as a Trustee-and trust law applies. As a result, it claimed that the Individual Defendants must disgorge the gross amounts of the challenged transactions regardless of whether those transactions were fair and reasonable, even if the Charities benefited from the transaction.
The Commonwealth, however, did not brief this issue and neither party had briefed the standard that should be employed in determining the legality of related transactions. As a result, an order was entered ordering the parties to file supplemental briefs on the issue of whether self-dealing between a charity and related individuals *1066 or entities is per se illegal, requiring disgorgement.
To determine if any of the Individual Defendants, as board members of the Charities, have engaged in illegal self-dealing, it is necessary to determine what the obligations of a director of a nonprofit are.
I.
Nonprofit corporations are formed under the Law.[4] They are governed by a board of directors who are a "group of persons under the direction of whom the business and affairs of the corporation are managed irrespective of the name by which the group is designated." 15 Pa.C.S. § 5103(a).
The status and duties of a director of a nonprofit corporation are set forth in several sections of the Law.
A.
15 Pa.C.S. § 5712 sets forth the director's status, obligations and duty of care to the nonprofit corporation. It provides, in relevant part:
(a) Directors.- A director of a nonprofit corporation shall stand in a fiduciary relation to the corporation and shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith, in a manner he reasonably believes to be in the best interests of the corporation and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his duties, a director shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data ... in each case prepared or presented by any of the following:
(1) One or more officers or employees of the corporation whom the director reasonably believes to be reliable and competent in the matters presented.
(2) Counsel, public accountants or other persons as to matters which the director reasonably believes to be within the professional or expert competence of such person.
(3) A committee of the board upon which he does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the director reasonably believes to merit confidence.
(b) Effect of actual knowledge.- A director shall not be considered to be *1067 acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted.
Id. (emphasis added).
When a person is in a fiduciary relationship, that person has "the highest standard of duty implied by law ...." Miller v. Keystone Insurance Company , 535 Pa. 531, 636 A.2d 1109, 1116 (1994). As our Supreme Court in Yenchi v. Ameriprise Financial, Inc. , 161 A.3d 811, 819-20 (2017), explained:
A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information. See Basile v. H & R Block, Inc. , 563 Pa. 359, 761 A.2d 1115, 1120 (2000) ; Young v. Kaye , 443 Pa. 335, 279 A.2d 759, 763 (1971) ("When the relationship between persons is one of trust and confidence, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage."); Sylvester v. Beck , 406 Pa. 607, 178 A.2d 755, 757 (1962) ; McCown v. Fraser , 327 Pa. 561, 192 A. 674, 676-77 (1937) ; In re Null's Estate , 302 Pa. 64, 153 A. 137 (1930) ; see also Black's Law Dictionary (10th ed. 2014) (defining a fiduciary duty as "a duty to act with the highest degree of honesty and loyalty toward another person and in the best interest of the other person")....
In addition, as fiduciary, a director of a nonprofit also has the duty of loyalty and obedience.
B.
The duty of loyalty requires that corporate directors devote themselves to corporate affairs with a view to promote the common interests and not only their own, and that they cannot directly or indirectly utilize their position to obtain any personal profit or advantage. Anchel v. Shea , 762 A.2d 346 (Pa. Super. 2000).
This provision also shields the nonprofit director from liability for an informed decision made in good faith that causes harm to the nonprofit. Known as the "business judgment rule," it creates a rebuttable presumption that corporate fiduciaries act on an informed basis, in good faith, and in the honest belief that the action taken was in the best interest of the company. See generally Cuker v. Mikalauskas , 547 Pa. 600, 692 A.2d 1042 (1997). The burden is on the party challenging the decision to establish facts rebutting that presumption. Id.
Our Supreme Court has explained that the adoption of the business judgment rule "reflects a policy of judicial noninterference with business decisions of corporate managers, presuming that they pursue the best interests of their corporations, insulating such managers from second-guessing or liability for their business decisions in the absence of fraud or self-dealing or other misconduct or malfeasance." Cuker , 692 A.2d at 1046. It also operates to "insulate officers and directors from judicial intervention in the absence of fraud or self-dealing, if challenged decisions were within the scope of the directors' authority, if they exercised reasonable diligence, and if they honestly and rationally believed their decisions were in the best interests of the company." Id. at 1048.
Factors that determine whether actions of a board fall outside the business judgment rule are whether the board was disinterested, whether it was assisted by counsel, whether it prepared a written report, whether it was independent, whether *1068 it conducted an adequate investigation, and whether it rationally believed its decision was in the best interests of the corporation-i.e. , acted in good faith. Id.
C.
15 Pa.C.S. § 5545 imposes a duty of obedience on the director of a nonprofit. This provision deals with "excess income"-a.k.a. "profits" derived from the nonprofit's operation. It requires that income be devoted to the lawful activities of the nonprofit and specifically prohibits the distribution of excess income to any director, officer or member of the nonprofit. It provides, in relevant part:
A nonprofit corporation whose lawful activities involve among other things the charging of fees or prices for its services or products, shall have the right to receive such income and, in so doing, may make an incidental profit. All such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors, or officers of the corporation . As used in this section the terms fees or prices do not include rates of contribution, fees or dues levied under an insurance certificate issued by a fraternal benefit society, so long as the distribution of profits arising from said fees or prices is limited to the purposes set forth in this section and section 5551 (relating to dividends prohibited, compensation and certain payments authorized).
15 Pa.C.S. § 5545 (emphasis added).
By requiring that "excess income" only be used for the lawful activities of the nonprofit provision, the duty of obedience requires that the director's decisions to expend funds substantively further the purpose for which the nonprofit was organized and not to any of its members, directors or officers of the corporation.
D.
However, notwithstanding all that, directors and the for-profit corporations that they control are permitted, under certain conditions, to enter into contracts with the nonprofits on whose boards they serve. 15 Pa.C.S. § 5728 provides that if notice is given to the board of directors and members and the material facts of that transaction are made known to them, a related transaction can be entered into with a director, officer or a related profit or nonprofit if it was "fair" at the time it was authorized. It provides:
(a) General rule.- A contract or transaction between a nonprofit corporation and one or more of its directors or officers or between a nonprofit corporation and another domestic or foreign corporation for profit or not-for-profit, partnership, joint venture, trust or other association in which one or more of its directors or officers are directors or officers or have a financial or other interest, shall not be void or voidable solely for that reason, or solely because the director or officer is present at or participates in the meeting of the board of directors that authorizes the contract or transaction, or solely because the vote of the director or officer is counted for that purpose, if:
(1) the material facts as to the relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors and the board authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors even though the disinterested directors are less than a quorum;
*1069 (2) the material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the members entitled to vote thereon, if any, and the contract or transaction is specifically approved in good faith by vote of those members; or
(3) the contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified by the board of directors or the members .
15 Pa.C.S. § 5728 (emphasis added).
E.
A director has breached a duty or engaged in illegal self-dealing and is personally liable for any harm to the corporation if, presumably, the transaction was palpably unfair, or constitutes willful misconduct or recklessness. 15 Pa.C.S. § 5713 provides, in relevant part:
(a) General rule.- If a bylaw adopted by the members of a nonprofit corporation so provides, a director shall not be personally liable, as such, for monetary damages for any action taken unless:
(1) the director has breached or failed to perform the duties of his office under this subchapter; and
(2) the breach or failure to perform constitutes self-dealing, willful misconduct or recklessness.
In addition to seeking damages from the members of the board, the corporate charter of the nonprofit may be revoked. 15 Pa.C.S. § 503 provides:
(a) General rule.- The Attorney General may institute proceedings to revoke the articles and franchises of a corporation if it:
(1) misused or failed to use its powers, privileges or franchises;
(2) procured its articles by fraud; or
(3) should not have been incorporated under the statutory authority relied upon.
(b) Powers of court.- In every action or proceeding instituted under subsection (a), the court shall have power to wind up the affairs of and to dissolve the corporation in the manner provided in this part or as otherwise provided by law.
Under the above provisions of the Law, the Individual Directors would not be liable if the transactions at issue here and the relationship and the material facts are disclosed as well as if the transactions were fair and reasonable at the time it was authorized.
II.
A.
Generally, the above analysis is not in dispute. What is in dispute is whether the same analysis applies to charitable nonprofits, which serve a different goal and purpose.
Nonprofits that do not have a charitable purpose are a form of organization that is used to serve their members without profit-e.g. , homeowners' associations and country clubs.[5] Unlike ordinary nonprofits, charitable nonprofits are incorporated to aid an indefinite number of persons for "charitable purposes" such as "the relief of poverty, the advancement and provision of education, including post-secondary education, the advancement of religion, the prevention and treatment of disease or injury, including mental retardation *1070 and mental disorders, governmental or municipal purposes and any other purpose the accomplishment of which is recognized as important and beneficial to the public." 15 Pa.C.S § 102(a).[6] See also In re Hill School , 370 Pa. 21, 87 A.2d 259 (1952) ; Pittsburgh Bible Institute v. Board of Property Assessment, Appeals and Review, Allegheny County , 405 Pa. 297, 175 A.2d 82 (1961).
Nonprofit charities can, as the Charities here, receive charitable exemptions under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), as well as exemptions from state and local law tax exemptions. In addition, third parties who contribute to the nonprofit charity are entitled to take a charitable deduction from their federal income taxes. To qualify for a charitable exemption from state or local taxes, an entity must first prove that it is a "purely public charity" under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution. Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals , 615 Pa. 463, 44 A.3d 3, 9 (2012) ; Community Options, Inc. v. Board of Property Assessment , 571 Pa. 672, 813 A.2d 680, 683 (2002).[7]
Because charities serve an indefinite number of people, the Commonwealth, through the Attorney General, is responsible for the public supervision of charities through his parens patriae powers. In re Milton Hershey School Trust , 807 A.2d 324 (Pa. Cmwlth. 2002); In re Coleman's Estate , 456 Pa. 163, 317 A.2d 631 (1974). In exercising that supervision, it is the duty of the Attorney General to ensure that the purpose of the charity remains charitable and to take such action necessary to make sure the charity carries out it charitable purpose and take necessary corrective action. In re Milton Hershey School Trust , 807 A.2d at 329. The Attorney General has the same power for trusts. 20 Pa.C.S. § 7735.
B.
There are very few provisions in the Law that deal specifically with nonprofits that are created for a charitable purpose. The one that is at issue here is 15 Pa.C.S. § 5547(a) (emphasis added), which provides:
Every nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation , in trust , for the purpose or purposes set forth in its articles. The board of directors or other body of the corporation shall, as trustees of such property, be held to the same degree of responsibility and accountability as if not incorporated ....
The question then is whether the actions of directors of nonprofits formed for charitable purposes are governed by the same standard as other nonprofit directors, or whether this provision deems all the charitable assets held "in trust," making those directors' standard of care the same as trustees of a charitable trust.
The answer to this question is important because if all the assets are held in trust, then trust principles apply to directors of *1071 nonprofits. Unlike 15 Pa.C.S. § 5728, which permits self-dealing in certain circumstances, self-dealing is much more proscribed when involving charitable assets. As our Supreme Court has explained:
The test of forbidden self-dealing is whether the fiduciary had a personal interest in the subject transaction of such a substantial nature that it might have affected his judgment in material connection. [In re ] Downing's Estate , supra , 162 Pa.Super. [354] at page 359, 57 A.2d 710 [ (1948) ], citing Scott on Trusts, Vol. 2, § 170.12, p. 877, and Restatement, Trusts, § 170(1), Comment h. See also Comment c. of the same section of the Restatement which declares that 'The trustee violates his duty to the beneficiary not only where he purchases trust property for himself individually, but also where he has a personal interest in the purchase of such a substantial nature that it might affect his judgment in making the sale.' It will be noted that the extent of the fiduciary's disqualifying interest need not be such as 'did affect his judgment' but merely such as 'might affect his judgment'. [ In re ] Downing's Estate , supra, 162 Pa.Super. at page 360, 57 A.2d 710.
'* * * In Chorpenning's Appeal , 32 Pa. 315, 316, it was said that '* * * the rule [forbidding self-dealing] is inflexible, without regard to the consideration paid, or the honesty of intent . Public policy requires this, not only as a shield to the parties represented, but as a guard against temptation on part of the representative.' In [Re ] Downing's Estate , supra , President Judge Rhodes of the Superior Court succinctly summarized the rule [162 Pa.Super.] at page 360, [57 A.2d 710 ] as follows: 'The prohibition against self-dealing is absolute; where the trustee violates it, good faith or payment of a fair consideration is not material .' See also Restatement, Trust, § 170(1), Comment h.
In re Comerford's Estate , 388 Pa. 278, 130 A.2d 458, 467 (1957) (emphasis added, corrections in In re Comerford's Estate ). Accord Sutliff v. Sutliff , 515 Pa. 393, 528 A.2d 1318, 1323 (1987) ("He violates that duty when he has a personal interest in trust dealings that might affect his judgment."); also Restatement (Second) of Trusts § 170 (1959).
C.
In addressing the effect of 15 Pa.C.S. § 5547(a), none of the parties make a textual analysis of what the words of the provision mean. Instead, they refer to other provisions of the Law to infer a meaning.
Even though it has a charitable tax exemption and it receives all income and assets from the incidental profits that come from providing services from government sources in carrying out its charitable purpose, the Charities contend that does not mean that those assets are held in trust under 15 Pa.C.S. § 5547(a). It points to 15 Pa.C.S. § 5545, which allows a nonprofit "the right to receive such income and, in so doing, may make an incidental profit." Because none of the Charities' property was donated and it is allowed to retain earnings, they contend that its assets are not trust property within the meaning of Section 5547(a) and the Individual Defendants are not trustees of any of the nonprofits' property.
The Commonwealth, however, points to other language contained in 15 Pa.C.S. § 5545, which is also in the Charities' Articles of Incorporation, providing that "[a]ll such incidental profits shall be applied to the maintenance and operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, *1072 directors, or officers of the corporation." It argues that since the only assets of the corporation comes from incidental profit, that means that all assets of the Charities, whether they be in cash or other personalty or realty, are imbued with the corporations' charitable purposes and, as such, are held in trust for the benefit of the public at large.
It points to In re Roxborough Memorial Hospital, 17 Fid. Rep.2d 412 (Phila. Orph. Ct. 1997), to support its position that 15 Pa.C.S. § 5547(a) encompasses all the assets of a nonprofit corporation formed for charitable purposes, not only assets that have been expressly donated. That decision stated:
The Hospital has generated revenues from the services provided. Such revenues like the assets used to generate them are to be used for the charitable purposes as set forth in the Hospital's articles of incorporation. A nonprofit corporation that charges fees is permitted to make an incidental profit. However, "[a]ll such incidental profit shall be applied to the maintenance and operation of the lawful activities of the corporation, and in no case shall be divided or distributed in any manner whatsoever among the members, directors or officers of the corporation." 15 Pa. C.S.A. § 5545. Accordingly, all property held by a nonprofit corporation is held in trust to carry out its charitable purposes. All property held by a charitable nonprofit including the operating revenues, grants, donations, bequests, etc. generated therefrom, constitute property committed to charitable purposes.
In re Roxborough Memorial Hospital , 17 Fid. Rep.2d at 422-23 (emphasis added).
However, In re Roxborough Memorial Hospital does not apply because it deals with the disposition of funds that were obtained from the sale of a hospital owned by a charitable nonprofit and not with whether directors of charitable nonprofits have the duty of care equivalent to that of a trustee of a charitable trust. In that case, it was proposed that excess funds from the sale of the hospital be given to the Roxborough Memorial Health Foundation, also a nonprofit charitable corporation, to carry out community-based health initiatives in the service area of the hospital.
In approving the request, the court held that when a Pennsylvania nonprofit charitable corporation undertakes any action governed by 15 Pa.C.S. Chapter 59, review by the court is required to determine whether or not property committed to charitable purposes will be diverted from its intended purposes. If it is shown that proceeding under Chapter 59 will result in diversion, the court shall enter an order pursuant to 20 Pa.C.S. Chapter 61. With regard to charitable nonprofits, 15 Pa.C.S. § 5976 (b) provides:
(b) Distribution of property committed to charitable purposes.- If the assets of the corporation include any property committed to charitable purposes, the board of directors or other body shall apply to the court for an order pursuant to section 5547(b) (relating to nondiversion of certain property) specifying the disposition of the property.
Because all of a charitable nonprofit's assets are committed to a charitable purpose, when a charitable nonprofit ceases business, then any remaining funds or property must be given to a charitable nonprofit with a similar charitable purpose. 15 Pa.C.S. § 5547(b) provides that "property cannot be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under 20 Pa.C.S. Ch. 77 (relating to trusts) specifying the disposition *1073 of the property."[8] This is unlike a nonprofit that is not a charity, which can, upon dissolution, distribute the assets to its members. 15 Pa.C.S. § 5975(c).[9]
None of that, though, addresses whether 15 Pa.C.S. § 5547(a) makes all the assets of a charitable nonprofit held "in trust" and, correspondingly, makes all charitable nonprofit directors' standard of care the same as trustees of charitable trusts. That determination depends on a textual analysis of how the phrase "may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation" is interpreted. If it is interpreted to not include revenues and excess revenues generated by a charity that are in or reflected in cash or property, then charitable nonprofit directors do not have a trustee duty of care but, rather, the same duty of care of all directors of nonprofits. However, if this provision is interpreted to include revenues and excess revenues-i.e. , all assets-then charitable nonprofit directors are the equivalent of trustees.
In 15 Pa.C.S. § 5547(a), the "may take, receive and hold real and personal property" part of the phrase indicates that something is being given to the nonprofit and not something generated from internal operations. Similarly, the part of the phrase that the trustee principles apply to property "as may be given, devised to, or otherwise vested in such corporation" deals with gifts, bequests and other property that is vested in the corporation for a charitable purpose. While it could be argued that the term "otherwise vested" includes all property that the charitable nonprofit holds, in the context of the overall phrase, it refers to that which is placed in its possession for charitable purposes.[10] For example, in In re Roxborough *1074 Memorial Hospital , the money cy pres'd to the foundation was properly vested in that charitable nonprofit to which trust principles would apply. Finally, if the General Assembly wanted trust principles to apply to all assets committed to the charitable purpose, it would have said so, just like it said so with regard to diversion of charitable assets.
What this means is that a director of a nonprofit charitable corporation does not have the equivalent obligation of a trustee but the director, when exercising his or her fiduciary duties, must take into consideration what is "in the best interests" of the corporation. This includes acting with due care, including reasonable inquiry, skill and diligence as a person of ordinary prudence would use under similar circumstances. The director must also take into consideration that the primary purpose is to advance the charitable purposes of the corporation.
Now to disposition of the Motions.
III.
For a contract or transaction between a nonprofit corporation and its directors or officers or other entities they control to be proper, it must be shown:
• That the nonprofit and the director(s) and/or officer(s) establish that notice was given to the board of directors and/or members of the material facts of that transaction;
• That the transaction was approved by a majority of the disinterested directors or by a vote of the members of corporation in good faith; and
• Once the above is shown, it must be established that the transaction was "fair" at the time it was authorized.
See 15 Pa.C.S. § 5728.
In support of their respective motions, the parties have submitted hundreds of exhibits, consisting of thousands of pages of documents, together with expert reports. In reviewing those documents, the parties appear to disagree as to what each document signifies, whether the transaction was fair at the time it was entered, and there is virtually no discussion of whether the board of directors or members were fully informed of the self-dealing transactions and whether it was authorized by the disinterested board of directors or approved by the members "in good faith." 15 Pa.C.S. § 5728(a)(3).
Accordingly, the Commonwealth's Motion for Summary Judgment and the Charities and Individual *1075 Defendants' Motion for Partial Summary Judgment are denied.
ORDER
AND NOW, this 1st day of March, 2018, the Commonwealth's Motion for Summary Judgment and the Charities and Individual Defendants' Motion for Partial Summary Judgment are denied.

Act of December 19, 1990, P.L. 1200, as amended , 10 P.S. §§ 162.1 -162.23.

15 Pa.C.S. §§ 5101 -5997.

Summary judgment is proper only where there is no genuine issue concerning any material fact and the moving party is entitled to judgment as a matter of law. Karoly v. Mancuso , 619 Pa. 486, 65 A.3d 301, 308-09 (2013) ; see also Pa. R.C.P. 1035.2(2) (providing summary judgment is proper if, after completion of discovery relevant to motion, adverse party who would bear burden of proof at trial fails to produce evidence of facts essential to cause of action or defense, which in jury trial would require issues to be submitted to jury). In considering a motion for summary judgment, the record must be viewed in the light most favorable to the non-moving party, and all doubts as to whether a genuine issue exists are resolved against the moving party. Karoly , 65 A.3d at 309. The record for purposes of deciding a motion for summary judgment includes the pleadings, depositions, answers to interrogatories, admissions, and affidavits, Pa.R.C.P. 1035.1(1) &(2); but oral testimony alone, of the moving party or his witnesses-i.e. , affidavits or depositions-even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact. See id. at 1035.2, Note (citing Penn Center House, Inc. v. Hoffman , 520 Pa. 171, 553 A.2d 900 (1989) and Borough of Nanty-Glo v. Am. Sur. Co. of New York , 309 Pa. 236, 163 A. 523 (1932) ). Moreover, "[t]he questions of whether there are material facts in issue and whether the moving party is entitled to summary judgment are matters of law." Alderwoods (Pennsylvania), Inc. v. Duquesne Light Co. , 630 Pa. 45, 106 A.3d 27, 34 n.5 (2014) (citations omitted).

Pennsylvania law provides three methods by which nonprofit corporations may be organized. First, a nonprofit corporation may be organized on a stock-share option basis. 15 Pa.C.S. § 5752. The second way to organize a non-profit corporation is on a non-stock basis with members. Section 5306(a)(7). The members select the nonprofit's board of directors. A member is to include any of the following:
(1) A person that has voting rights in a membership corporation.
(2) When used in relation to the taking of corporate action by a membership corporation, a delegate to a convention or assembly of delegates of members established pursuant to any provision of this subpart who has the right to vote at the convention or assembly in accordance with the rules of the convention or assembly.
(3) A person that has been given voting rights or other membership rights in a membership corporation by a bylaw adopted by the members pursuant to section 5770 (relating to voting powers and other rights of certain securityholders and other entities) or other provision of law, but only to the extent of those rights.
(4) A shareholder of a corporation, if the corporation issues shares of stock.
15 Pa.C.S. § 5103. The third way to organize a nonprofit corporation is on a non-stock, no member basis. Id. In this type of nonprofit corporation, all formal control is with the directors themselves.

"Corporation not-for-profit" is defined as "[a] domestic or foreign corporation not incorporated for a purpose or purposes involving pecuniary profit, incidental or otherwise, whether or not it is a cooperative corporation." 15 Pa.C.S § 102(a).

The Uniform Trust Act has a similar definition. It provides that "A charitable trust may be created for the relief of poverty, the advancement of education or religion, the promotion of health, governmental or municipal purposes or other purposes the achievement of which is beneficial to the community." 20 Pa.C.S. § 7735(a).

See also Section 5 of the Institutions of Purely Public Charity Act, Act of November 26, 1997, P.L. 508, as amended , 10 P.S. §§ 375.

20 Pa.C.S. § 7740.3(a)(3) provides "the court shall apply cy pres to fulfill as nearly as possible the settlor's charitable intention, whether it be general or specific." Application of the doctrine of cy pres requires a court to exercise its discretion in such manner as to award funds to charity, which most resembles the one that settlor intended to benefit, and, thus, it is necessary to examine purposes and objects of that charity, the locality that charity intended to serve, and the nature of the population that was the intended object of the charitable gift.

15 Pa.C.S. § 5975(c) provides, "The corporation shall, as speedily as possible, proceed to collect all sums due it, convert into cash all corporate assets the conversion of which into cash is required to discharge its liabilities and, out of the assets of the corporation, discharge or make adequate provision for the discharge of all liabilities of the corporation, according to their respective priorities. Except as otherwise provided in a bylaw adopted by the members or in this subpart or by any other provision of law, any surplus remaining after paying or providing for all liabilities of the corporation shall be distributed to the shareholders, if any, pro rata, or if there be no shareholders, among the members per capita. See Section 5972(a) (relating to proposal of voluntary dissolution)."

"The ancient maxim 'noscitur a sociis' summarizes the rule that the meaning of words may be indicated or controlled by those words with which they are associated. Words are known by the company they keep." Northway Village No. 3, Inc. v. Northway Properties, Inc. , 430 Pa. 499, 244 A.2d 47, 50 (1968). The principle of noscitur a sociis is applied to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of the [General Assembly]." Gustafson v. Alloyd Co. , 513 U.S. 561, 575, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995) (citations and quotations omitted). Pursuant to this rule, "the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it." Ford Motor Company v. Unemployment Compensation Board of Review , 168 Pa.Super. 446, 79 A.2d 121, 123 (1951) (footnote omitted).
A related concept is that of ejusdem generis. "Under ... [the] doctrine ejusdem generis ('of the same kind or class'), where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated." McClellan v. Health Maintenance Organization of Pennsylvania , 546 Pa. 463, 686 A.2d 801, 806 (1996) (citations omitted). Stated in somewhat repetitive yet different language, the rule of ejusdem generis instructs that "where general words follow an enumeration of ... words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to ... the same general kind or class as those specifically mentioned." Steele v. Statesman Insurance Company , 530 Pa. 190, 607 A.2d 742, 743 (1992) (citations omitted). This maxim is codified conceptually in Section 1903(b) of the Statutory Construction Act, which provides, "General words shall be construed to take their meanings and be restricted by preceding particular words." 1 Pa.C.S. § 1903(b). See generally S.A. by H.O. v. Pittsburgh Public School District , 160 A.3d 940, 945-46 (Pa. Cmwlth. 2017).