# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peggy Ambler, an adult individual, and : 
John Ambler, an adult individual : 
  : 
          v. : No. 69 C.D. 2019
  : ARGUED: November 14, 2019
Board of School Directors of the : 
Hatboro-Horsham School District, : 
and Hatboro-Horsham School District, : 
a Political Subdivision, : 
             Appellants : 


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ELLEN CEISLER, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: December 12, 2019**


       The Board of School Directors (Board) of the Hatboro-Horsham School District and the Hatboro-Horsham School District (District) appeal from the order of the Court of Common Pleas of Montgomery County (trial court), Orphans' Court Division, granting equitable relief to Peggy and John Ambler (Amblers) to the effect of directing that any sale of the property on which the Limekiln Simmons Elementary School (Property or Limekiln Simmons School) stands be in accordance with what is commonly known as the Donated or Dedicated Property Act (DDPA).[1] The Board and the District assert that any sale of the property is governed instead by Section 707 of the Public School Code of 1949[2] (Code). We agree and therefore reverse.

---

[1] Act of December 15, 1959, P.L. 1772, 53 P.S. §§ 3381–3386.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 7-707.

The facts of the case were stipulated by the parties and are not in dispute. (Stipulated Facts "S.F." 1-34, Reproduced Record "R.R." at 142-147a.) The Amblers maintain a residence, farm, and natural area located in Horsham Township, Montgomery County. The Amblers' residence, farm, and natural area, from which the Property originated, is adjacent to the Property on multiple sides and comprises multiple parcels which have been in the Ambler family for several generations. The District is a successor to the District of the Township of Horsham (Horsham Township School District). The Board has final decision-making authority for the District and operates on its behalf. The Property is owned by the District. In 1931, Dorothea Simmons (Simmons) donated ten acres—a portion of her farm property— to the Horsham Township School District for use as a public school. The Horsham Township School District accepted the Property donated by Simmons. In 1933, a school, which is now known as the Limekiln Simmons School, was built on the Property, with construction largely supported by general tax revenues. A plaque memorializing Simmons' donation was erected at the school. In 1957, additional real estate was transferred from Howard Ambler, Jr., to Horsham Township School District for $100.[3] Between 1953 and 1957, additions were made to the school building with the cost of construction largely supported by general tax revenues. From 1933 to 1992, the building known as Limekiln Simmons School was used as a school for kindergarten through the fifth grade, at which time students in those grades were moved to the current Simmons Elementary School at a different location.

Subsequently, a Montessori school leased the Property in 1992 and occupied the Limekiln Simmons School building for intervention classes until 1999.

---

[3] The real estate transferred by Howard Ambler, Jr., is not further discussed in the record.

In 2000, special education services were moved into the Limekiln Simmons School, as were kindergarten students. In 2009, preschool classes were relocated to the Limekiln Simmons School; also, Montgomery County Intermediate Unit Speech class and Special Services/Education Officers were relocated to other buildings. In 2010, the District added another preschool class at Limekiln Simmons School. In August 2011, the Limekiln Simmons School closed but remained officially open with the Pennsylvania Department of Education. From its opening to its closure, all expenses of upkeep, maintenance, heating, lighting, and plumbing were supported by the District with general tax revenue. The Property has not been used by the School District since August of 2011.[4]

In anticipation of selling the Property, the Board and the District obtained appraisals and assessments. In November 2016, the District entered into an agreement of sale with Danny Jake Corporation, a private developer, to sell the Property for $593,140, which agreement included numerous contingencies. The Agreement contained a no-cost, no-obligation termination clause and required that the buyer demolish the school building and pay all associated costs.

In April 2017, the Board filed a petition in the trial court requesting approval of the sale citing the Code as authority for the sale. (S.F. 28, R.R. at 146a.) The trial court held hearings in May 2017, November 2017, and January 2018, open to interested parties on the issue of valuation for the proposed sale of the Property. (S.F. 30.) During the course of the hearings, the Amblers objected to the sale citing the provisions of the DDPA. (S.F. 29, 31.) In support of the sale of the Property,

---

[4] Supplemental stipulations of fact were submitted later in the litigation. (R.R. at 120-122a). The thrust of those supplemental stipulations of fact was that the Amblers requested at several junctures from October 2017 onward that the District discuss their offer of private acquisition of the Property to form the Simmons Food and Sustainability Educational Center.

the Board and the District presented the testimony of two expert appraisers and the director of business affairs for the District. (S.F. 32.)

In January 2018, the trial court issued a memorandum and order staying its decision on the valuation of the Property and granted the Amblers leave to file a complaint in equity in the Orphans' Court Division. (S.F. 34.) In March 2018, the Amblers filed their complaint, to which the Board and District filed an answer and new matter. Following a directive of the trial court, the parties filed stipulations of fact (set forth above). In December 2018, after briefing, the trial court issued an order granting Count I of the Amblers' complaint, requiring that any sale of the Property proceed in accordance with the DDPA. The order of the trial court precluded the proposed sale. This appeal followed. The trial court issued an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1925(a).

On appeal,[5] the central issue—an issue of first impression—is whether the Code or the DDPA or both apply to the disposal by sale of the Property donated by Simmons. The Board and District contend that the sale of the Property should be governed exclusively by Section 707 of the Code, 24 P.S. § 7-707, and that the trial court erred in requiring any sale of the school to comply with the DDPA. We agree.

Section 707 of the Code vests in a school board "the power and authority" to sell unused and unnecessary land and buildings through a variety of means. *Id.* At private sale, the method the District and Board intended to use to sell the property, the following process applies:

---

[5] As the issue of the interrelationship between the Code and the DDPA involves a question of law, specifically statutory interpretation, we exercise plenary review. *See In re Erie Golf Course,* 992 A.2d 75, 85 (Pa. 2010)

> At private sale, subject to the approval of the court of common pleas of the county in which the school district is located. Approval of the court shall be on petition of the board of school directors, which petition shall be executed by the proper officers of the board, and shall contain a full and complete description of the land proposed to be sold, a brief description and character of the building or buildings erected thereon, if any, the name of the prospective purchaser, the amount offered for the property, and shall have attached thereto an affidavit of at least two persons who are familiar with the values of real estate in the locality in which the land and buildings proposed to be sold are located, to the effect that they have examined the property, that the price offered therefor is a fair and reasonable one and in their opinion a better price than could be obtained at public sale, and that they are not interested, either directly or indirectly, in the purchase or sale thereof. Before the court may act upon any such petition it shall fix a time for a hearing thereon and shall direct that public notice thereof be given as provided in clause (1) of this section. A return of sale shall be made to the court after the sale has been consummated and the deed executed and delivered.

24 P.S. § 7-707(3). A district may use the funds derived from such sales for debt service or capital expenditures. 24 P.S. § 7-707(7). There is no distinction in Section 707 between buildings and lands acquired through donation and those acquired through the more commonplace methods of purchase or condemnation.

> Section 2 of the DDPA provides, in relevant part, as follows:

> [a]ll land or buildings . . . donated to a political subdivision for use as a public facility, or dedicated to such public use or offered for dedication to such use, where no formal record appears as to acceptance by the political division, as a public facility . . . shall be deemed to be held by such political subdivision, as trustee, for the benefit of the public with full legal title in the said trustee.

53 P.S. § 3382. "Public facility" is defined as "without limitation any park, theatre, open air theatre, square, museum, library, concert hall, recreation facility or other

5

public use." Section 1(3) of the DDPA, 53 P.S. § 3381(3). "Buildings" are defined as "all structures, without limitation any park, theatre, open air theatre, square, museum, library, concert hall, recreation facility or other public use." Section 1(2) of the DDPA, 53 P.S. § 3381(2). "Lands" are defined as "all real estate, whether improved or unimproved." Section 1(1) of the DDPA, 53 P.S. § 3381(1). Section 3 of the DDPA restricts the use of covered lands and buildings to "the purpose or purposes for which they were originally dedicated or donated, except insofar as modified by court order pursuant to this act." 53 P.S. § 3383.

With respect to the court relief referenced in Section 3 of the DDPA, a political subdivision which believes that "the continuation of the original use . . . is no longer practicable or possible and has ceased to serve the public interest" may apply to the orphans' court of the county in which it is located for appropriate relief. Section 4 of the DDPA, 53 P.S. § 3384. Such relief is limited to (1) "[s]ubstituting other lands or property of at least equal size and value held or to be acquired by the political subdivision in exchange for the trust property in order to carry out the trust purposes"; (2) "[i]f other property is not available, sell[ing] the property and apply[ing] the proceeds to carry out the trust purposes"; or (3) "[i]n the event the original trust purpose is no longer practicable or possible or in the public interest, apply the property or the proceeds therefrom in the case of a sale to a different public purpose."[6] Section 4(1)-(3) of the DDPA, 53 P.S. § 3384(1)-(3). Section 5 of the DDPA provides for an extensive process of notice, protest, intervention, and hearing. 53 P.S. § 3385.

---

[6] A fourth option, applicable to land and buildings that were "dedicated but for which no formal acceptance appears of record," 53 P.S. § 3384(4) is not relevant, as it has been stipulated that Horsham Township School District accepted the land from Simmons.

6

We believe the third argument raised by the Board and the District is dispositive: that a conflict of laws analysis leads to the conclusion that Section 707 of the Code exclusively governs the disposition of the Property.

In interpreting the Code and the DDPA, we are guided by the principles set forth in the Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. §§ 1501-1991. Under the SCA, the paramount objective of interpretation is to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The primary indication of the legislature's intent is the plain language of the statute. *Dep't of Envtl. Prot. v. Cumberland Coal Res., LP*, 102 A.3d 962, 975 (Pa. 2014). The SCA directs that "[e]very statute shall be construed, if possible, to give effect to all of its provisions" and that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(a), (b). However, Section 1921(c) of the SCA provides that if the words of a statute "are not explicit," then a reviewing court may consider other factors, such as the statute's purpose, in order to ascertain legislative intent. 1 Pa.C.S. § 1921(c).

Section 1933 of the SCA provides that "[w]henever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both." 1 Pa.C.S. § 1933 (relating to particular controls general); *see also* 1 Pa.C.S. § 1932 (relating to statutes *in pari materia*). However, "[i]f the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision," unless the general provision was both enacted later and it was the "manifest intention of the General Assembly that such general provision shall prevail." *Id.*

7

There is no provision in the text of the DDPA expressly excluding its application to lands donated for use as a school.[7] Conversely, there is no provision in Section 707 of the Code stating that it is the exclusive law governing the disposal of school lands. However, between the DDPA and the Code, the processes, notice provisions, rights to object, options for disposing of land and buildings, and disposition of proceeds differ irreconcilably. To pick but one important example, the Code requires the use of proceeds from the sale of land and buildings to be used for debt service or capital expenditures, 24 P.S. § 7-707(7), while the DDPA requires that proceeds from a sale be used to carry out the trust purposes or, if that is impracticable, impossible, or not in the public interest, be applied to another public purpose. 53 P.S. § 3384(1)-(2).

The Amblers argue that the Code and DDPA may be read *in pari materia*, and cite the Supreme Court's recent decision in *In re Borough of Downingtown*, 161 A.3d 844 (Pa. 2017), as one in which the DDPA was read *in pari*

---

[7] The Board and District argue that the DDPA does not apply because the purpose of Simmons' donation to the Horsham Township School District, for use as a school, does not fall within the meaning of "public facility" as the term is defined. The Board and District note that "school" is not expressly listed in the definition of public facility. They further argue that a school differs from the listed uses (i.e., "park, theatre, open air theatre, square, museum, library, concert hall, [or] recreation facility") in that those uses are open to the general public whereas a school is a facility the use of which is generally restricted to a subset of the public. This amounts to an invocation of the *ejusdem generis* rule, by which "general statutory words follow[ing] the enumeration of particular classes of persons or things" are "construed as applicable only to persons or things of the same general nature or class as those enumerated." *Commonwealth by Kane v. New Founds., Inc.*, 182 A.3d 1059, 1073 n.10 (Pa. Cmwlth. 2018); *see also* 1 Pa.C.S. § 1903(b) ("[g]eneral words shall be construed to take their meanings and be restricted by preceding words.").

The Amblers' argument that a school is a public use as the term is commonly used is well-taken. We must nonetheless determine whether the Code supersedes the DDPA as it applies to school land and buildings.

*materia* with a different enactment, a legislative release from the restrictions of the Project 70 Act.[8] *Id.* at 871. While it is disputed whether the school is a public facility or public use, it cannot seriously be argued that the nature and extent of authority/restriction granted to school boards under the Code can simply be grafted onto the nature and extent of authority/restriction granted to political subdivisions

---

[8] Act of June 22, 1964 (Special Sess.), P.L. 131, 72 P.S. §§ 3946.1-3946.22. The Project 70 Act was enacted by the legislature to implement Article 8, § 15 of the Pennsylvania Constitution, entitled "Project '70'," which was adopted by the voters of the Commonwealth in 1963, and which provides:

> In addition to the purposes stated in article eight, section seven of this Constitution, the Commonwealth may be authorized by law to create debt and to issue bonds to the amount of seventy million dollars ($70,000,000) for the acquisition of land for State parks, reservoirs and other conservation and recreation and historical preservation purposes and for participation by the Commonwealth with political subdivisions in the acquisition of land for parks, reservoirs and other conservation and recreation and historical preservation purposes, subject to such conditions and limitations as the General Assembly may prescribe.

Pa. Const. art. VIII, § 15. *Downingtown* is a complex case dealing in part with whether the DDPA applies to lands purchased in part with Project 70 Act funds which the municipality wished to sell to a developer. It was argued by the municipality and the purchasing developer that a legislative release from the restrictions imposed by the Project 70 Act upon the subject lands removed it from coverage by the DDPA. The Supreme Court, reversing this Court, held that the DDPA "covers all property purchased by a municipality which has been dedicated to the public use as a public facility, and necessarily includes property which is purchased by the municipality, in part, with Project 70 Act funds, and thereafter dedicated to public use as a public facility." *Downingtown,* 161 A.3d at 873-874.

This case substantially differs in that rather than interpreting two enactments that do not conflict, there are provisions of the Code and the DDPA which irreconcilably conflict, with the former being specific to school boards disposing of unneeded lands and buildings.

under the DDPA, or vice versa. Tellingly, no method for reconciling the two is recommended by the Amblers in their brief.[9]

The Amblers alternatively suggest that the later-enacted DDPA should control if the Code is found to conflict. However, for a later-enacted general provision to supersede a special provision, it must be "the manifest intention of the General Assembly that such later provision shall prevail." 1 Pa.C.S. § 1933. There is no such indication in this case.

In light of the foregoing, we reverse the order of the trial court.

 

 

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

---

[9] At argument, the Amblers suggested that the Code and the DDPA procedures both be applied, with application to the trial court initially for approval under the Code and subsequent application to the Orphans' Court Division for approval under the DDPA. However, besides being cumbersome and confusing to administer, such a process would do nothing to resolve conflicts between the Code and the DDPA as to the substantive authority of the District in disposing of the Property and using the proceeds.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Peggy Ambler, an adult individual, and :
John Ambler, an adult individual :
  :
         v. : No. 69 C.D. 2019
  :
Board of School Directors of the :
Hatboro-Horsham School District, :
and Hatboro-Horsham School District, :
a Political Subdivision, :
            Appellants :

## O R D E R

AND NOW, this 12th day of December, 2019, the order of the Court of Common Pleas of Montgomery County, Orphans' Court Division, in the above-referenced matter is REVERSED.

_____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge