IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Painted Bride Art : 
Center, Inc., non-profit corporation : 
                       : No. 1642 C.D. 2019
                       : Argued: September 17, 2020
Appeal of: Painted Bride Art : 
Center, Inc. : 


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION
BY JUDGE CROMPTON              FILED: October 20, 2020

Before this Court is the appeal of Painted Bride Art Center, Inc. (Painted Bride), a non-profit corporation, from the September 26, 2019 Decree and Order of the Philadelphia County Court of Common Pleas, Orphans' Court Division (Orphans' Court), denying Painted Bride's Petition (Petition) to approve an agreement of sale of real property to Groom Investments, LLC (Buyer).

## I.    Background

Painted Bride is a Pennsylvania nonprofit corporation, exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code.[1] Painted Bride's Br. at 10. "It was founded by a group of artists in 1969 as part of

---

[1] 26 U.S.C. §501(c)(3) (2020).

the "alternative space movement," dedicated to maximizing cultural diversity and visibility in the arts." *Id*. The corporation was named "Painted Bride" because the space it originally occupied was a former bridal shop on South Street in Philadelphia. *Id*. Painted Bride's Articles of Incorporation state that it is organized

> exclusively for the purpose of furtherance of the arts and promotion of cultural endeavors among its members and more particularly in the community by promoting and participating in painting, sculpture, drama, music, dance and poetry not for profit[,] but conducive to physical and mental development of its members and the community and for the purpose of acquiring the necessary property to be used in furthering the purposes of this corporation.

Reproduced Record (R.R.) at 71a.

In the early 1980s, Painted Bride purchased and moved into properties in Philadelphia's Old City area, converting the same into multiple art spaces, including a performance space and two art galleries in which it has presented music, dance, and theater programs, and hosted visual art exhibitions. Painted Bride's Br. at 11-12. In 1990, Painted Bride allowed, or otherwise entered into an agreement with Isaiah Zagar (Zagar), an internationally known, Philadelphia-based artist, for Zagar to create a mosaic by embedding tiles, mirrors, and artifacts directly on the external walls of Painted Bride's building.[2] This mosaic is referred as the "Mosaic," or sometimes as the "Skin of the Bride." Painted Bride's Br. at 13; Zagar's Br. at 4. Over the ensuing nine years, Zagar created a 7,000-square-foot mosaic, which covers Painted Bride's building from its ground to its roofline. Zagar's Br. at 4. However,

---

[2] It is unclear from the record whether Zagar's services were *commissioned* by the Painted Bride or whether the Painted Bride merely *allowed* Zagar to erect the Mosaic.

Zagar does not claim that he retained any ownership interest in the Mosaic or that Painted Bride agreed to maintain or preserve it. Painted Bride's Br. at 13.

Painted Bride acknowledges that Zagar is a prolific artist and that he has installed more than 200 mosaics in Philadelphia. Further, Painted Bride relates that, in 2004, Zagar registered a Pennsylvania non-profit entity, *i.e.*, Philadelphia Magic Gardens (Magic Gardens), and created the Magic Gardens in Philadelphia, which is a 10,000-square-foot space with interior and exterior walls "blanketed with mosaics." Painted Bride's Br. at 13. Painted Bride further acknowledges that "Magic Gardens' mission is to preserve Zagar's public murals, including the Magic Gardens." *Id*.

In its Opinion Sur Appeal, the Orphans' Court provides the following, useful timeline of events:

> In 2013, [Painted Bride] began the process of investigating solutions to its declining financial situation by engaging consultants in the areas of finance, fundraising, and planning, as well as holding forums with community members. Believing [its] [p]roperty required an assortment of repairs and improvements, [Painted Bride] made the decision to sell [it] during an August 2017 Board [m]eeting and sale of the [p]roperty was announced in December 2017.[3]

---

[3] Painted Bride asserts that the building, which includes the "Skin of the Bride" mosaic, needs major repairs and upgrades and that "the untenable related expenses contributed to Painted Bride's inability to achieve a sustainable business model." Painted Bride's Br. at 1. Thus, after establishing sale of the property would not divert it from its mission of providing arts programming in Philadelphia, and, in fact, would better enable it to accomplish this mission, Painted Bride sought permission to sell the property to Buyer. *Id*.

Orphans' Court Opinion Sur Appeal at 3 (citations omitted).

The "Skin of the Bride" mosaic has been exposed to the elements for 25 years and "large pieces have fallen off." Painted Bride's Br. at 13. When that has happened, Painted Bride's Executive Director has contacted Zagar, who makes the repairs. Painted Bride's Br. at 14; Zagar's Br. at 5. Painted Bride asserts that, despite these efforts, the Mosaic is in poor shape, and it is unsafe. Painted Bride's Br. at 14. Painted Bride notes that the Executive Director of Magic Gardens, herself, agreed, through her testimony before the Orphans' Court, that the Mosaic cannot be moved. *Id*.; Reproduced Record (R.R.) at 440a. Further, Painted Bride contends that the Mosaic needs immediate work and will require perpetual maintenance. Painted Bride's Br. at 14. Painted Bride and Zagar agree that Magic Gardens has committed to making all repairs to the Mosaic, in perpetuity, and gratis to Painted Bride or any future owner of the property, although Painted Bride contends this offer was vague, and Magic Gardens did not provide detailed information in this regard. Painted Bride's Br. at 14; Zagar's Br. at 5.

On May 10, 2019, Painted Bride commenced a civil action in the Orphans' Court by filing a Petition to Approve Agreement of Sale Between it and Buyer for the subject property for the sum of $4,850,000.[4] Orphans' Court

---

[4] "Specifically[,] the Agreement was for the sale of the real estate and all structures contained therein and thereon, located at 230-236 Vine Street, 238 Vine Street, 255 N. Bodine Street, 229-235 New Street, [and] 237 New Street in the City of Philadelphia, for the sum of $4,850,000." Orphans' Court Memorandum at 1. "The Petition was filed with Orphans' Court because of its jurisdiction under 20 Pa.C.S. §§711 and 712 over nonprofit corporations, together with the special situations presented herein involving not only the almost total liquidation of **(Footnote continued on next page…)**

4

Memorandum at 1.  The Petition named Buyer, Zagar, and the Pennsylvania Office of Attorney General (A.G.) as parties of interest.  R.R. at 17a-18a.  In its June 10, 2019 Answer, the A.G. stated it would "await completion of the record before forming a belief as to the truth of the matter."  R.R. at 242a.  Zagar filed an Answer and New Matter on June 12, 2019, asking the Orphans' Court to deny the Petition. R.R. at 203a.

Zagar opposed the sale on the ground that it was "against the public interest, because it will result in the destruction of the Mosaic [he had installed on the building's exterior], and in the loss of a venerated arts venue critical to the cultural life of the region, together with its 250-seat theater, a sprung dance floor, rehearsal space, art galleries, offices and other cultural facilities."  R.R. at 267a-268a.  Zagar also contended "the sale is especially against the public interest in the context of an existing alternative offer from Lantern Theater Company [Lantern] to purchase the [b]uilding."  R.R. at 268a.

The Orphans' Court held a bench trial on September 10, 2019.  R.R. at 270a.; Orphans' Court Memorandum at 2.  At the close of the evidentiary hearing, the Orphans' Court directed all parties to submit written comments by September 16, 2019.  R.R. at 459a.  The A.G.'s submission stated that, based on the record and exhibits, as well as its own investigation, including a review of the Petition and supporting materials, it had no objection to the relief requested in Painted Bride's Petition.  R.R. at 617a.  On September 26, 2019, the Orphans' Court issued an Order

---

corporate assets but also the almost certain destruction of [a] unique façade covering the structure."
Orphans' Court Memorandum at 1-2.

and Decree denying Painted Bride's Petition.  Orphans' Court Memorandum at 1-4.  Painted Bride's Br. at 9; App. A and B.

In its Memorandum, the Orphans' Court stated it did not disagree that maintenance of the property at issue has placed a severe burden on Painted Bride and that the "Skin of the Bride" Mosaic is in need of restoration.  However, the Orphans' Court determined the façade "is considered by many to be an irreplaceable work of art," and "there has been no concerted effort to enlist the services of [Zagar] to maintain and/or restore the façade."  Orphans' Court Memorandum at 2-3.  Further the Orphans' Court determined that Painted Bride had "failed to present evidence of the value of the 'Skin of the Bride,' compared to Zagar's testimony that the work "is 'priceless.'"  Orphans' Court Memorandum at 3.  The Orphans' Court determined that Painted Bride failed in sustaining its burden of proving the sale, "which would all but ensure the destruction of the facade, is under any analysis for the best interest of the [Painted Bride], or the public to which [it] is dedicated to serve."  *Id*.  The Orphans' Court determined that, "considering the dearth of attempts at alternatives," the sale was against the stated purposes of the non-profit corporation, and, therefore,

entered a Decree denying the Petition. Orphans' Court Memorandum at 3-4. Painted Bride now appeals to this Court for review.[5,6]

## II. Painted Bride's Arguments

Painted Bride argues that the Orphans' Court's ruling erroneously assumes Painted Bride's charitable purposes include preserving the Mosaic. Painted

---

[5] In reviewing an Orphans' Court decision or decree, the appellate court must determine whether the record is free from legal error and whether the findings below are supported by competent and credible evidence. *In re Estate of Damario*, 412 A.2d 842 (Pa. 1980). Findings of the Orphans' Court will not be reversed unless it appears that it clearly committed an abuse of discretion or an error of law. *In re Estate of Girard*, 132 A.3d 623, 631 (Pa. Cmwlth. 2016). "Although an appeals court cannot sit as a trier of issues of fact and must accept the findings of fact of the lower court as the basis of its review . . . an appellate court is not bound to accept . . . findings . . . which are without support in the record or have merely been derived from other facts." *In re Barnes Found.*, 684 A.2d 123, 130 (Pa. Super. 1996). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Belleville v. David Cutler Grp.*, 118 A.3d 1184, 1195 (Pa. Cmwlth. 2015) (quoting *Commonwealth v. Smith*, 673 A.2d 893, 895 (Pa. 1996)).

[6] By order of this Court, the parties were required to address whether Painted Bride's appeal in this matter was untimely, as the Orphans' Court Decree was issued on September 26, 2019, and although Painted Bride submitted a timely Notice of Appeal, via the Orphans' Court electronic docketing system on October 24, 2019, computer system errors led to a situation where the Notice of Appeal was rejected for failure to pay one of two filing fees, *i.e.*, the Commonwealth Court filing fee, and Painted Bride was not notified, and remained unaware of same until October 29, 2019. On October 29, 2019, Painted Bride resubmitted its Notice of Appeal and paid the additional filing fee. Painted Bride subsequently filed a Petition to Deem Notice of Appeal Filed as of October 24, 2019. By stipulation of Painted Bride and Zagar, and without objection by the A.G., the parties agreed that the Notice of Appeal would be deemed filed on October 24, 2019. Painted Bride's Br. at 3-5. On November 5, 2019, the Petition to Deem Notice of Appeal Filed as of October 24, 2019, was granted via an Order of the Orphans' Court. R.R. at 653a. Thus, the Notice of Appeal was deemed filed as of its submission date of October 24, 2019. Given the technical nature of the error, the stipulation of the parties, and the aforementioned November 5, 2019 Order of the Orphans' Court, along with the fact that neither Zagar, nor the A.G. address the issue of timeliness in their briefs on appeal to this Court, Painted Bride's appeal is considered timely, and there is no need for us to address this issue any further herein.

Bride's Br. at 25. Painted Bride asserts that its purposes are "promoting and presenting art performances and exhibitions," as enunciated in its Articles of Incorporation. *Id*. The Articles allow Painted Bride to acquire property that furthers these purposes but do not require it "to maintain a performance space." *Id*. Painted Bride contends that:

> [u]nder 15 Pa.C.S. §5547(b), a charitable entity's purposes may be altered only by a court order applying the *cy-pres*[7] doctrine codified in 20 Pa.C.S. §7740.3. No such order was entered here, and the record would not support one: Painted Bride's purposes are not impracticable or impossible, and there is no evidence that its founders intended to devote charitable assets to maintain physical artwork, much less a single piece of artwork. Thus, the Orphans' Court's ruling improperly requires Painted Bride to divert its assets to a purpose for which they were not intended, in violation of 15 Pa.C.S. §§5547(b) and 5930.

Painted Bride's Br. at 25-26.

Relying on *Commonwealth by Kane v. New Foundations, Inc.*, 182 A.3d 1059 (Pa. Cmwlth. 2018), Painted Bride acknowledges "[a] nonprofit entity's assets must be used to advance the purposes for which it was created, and only those purposes." Painted Bride's Br. at 28. However, Painted Bride notes that this Court "has not specifically addressed a nonprofit entity's petition to approve a sale of all or substantially all of its assets," but argues that "the principles guiding the analysis" were discussed in *In re Roxborough Memorial Hospital*, (C.C.P. Phila., O.C. No.

---

[7] The definition of "cy-pres" is: "As near as [possible.] The rule of cy-pres is a rule for the construction of instruments in equity, by which the intention of the party is carried out as near as may be, when it would be impossible or illegal to give it literal effect." https://thelawdictionary.org/cy-pres/ (last visited on October 19, 2020).

8

555, Sept. 30, 1997) (cited in *New Foundations*, 182 A.3d at 1072-74). Painted Bride's Br. at 28-29. Painted Bride explains:

> The issue in *Roxborough* was whether a nonprofit hospital's sale of all of its assets would result in a 'diversion of property committed to charitable purposes from its intended objects.' [*Roxborough*], [slip op.] at *26-27. The court approved the sale, finding that the hospital's board of directors had weighed the decision to sell carefully, including by hiring consultants. [Slip op.] at *27-32. The court also found that the charitable assets would not be improperly diverted from their intended objects because the assets would be sold to another nonprofit corporation with objectives consistent with the hospital's articles of incorporation and used to further those objectives. [Slip op.] at *32-33. In support of its approval of the sale, the *Roxborough* court also determined that the sale price was reasonable, no board member or manager would receive any benefit from the sale, and the Attorney General did not object to the transaction.[8] [Slip op.] at *35-36.

Painted Bride's Br. at 29-30.

---

[8] Although not addressed in detail herein, in the present matter, the A.G. submitted a brief rejecting Painted Bride's contention that its "decision to remain in the background at the Orphans' Court stage" somehow could be interpreted to mean that the A.G. necessarily had no objection to the transaction, noting that Painted Bride's position reflects both "a fundamental misunderstanding of the [A.G.'s] role and an incomplete grasp of the public interest principle that guides the [A.G.] in the litigation context." A.G.'s Br. at 15. Quoting *New Foundations*, the A.G. states: "'[b]ecause charities serve an indefinite number of people, the Commonwealth, through the [A.G.], is responsible for the public supervision of charities through its *parens patriae* powers.'" *New Foundations*, 182 A.3d at 1070 (emphasis in original); A.G.'s Br. at 15. Citing *New Foundations* and *In re Milton Hershey School Trust*, 807 A.2d 324, 330 (Pa. Cmwlth. 2002), the A.G. states that "the role of the [A.G.] is to ensure that charitable nonprofits, as well as charitable trusts, are administered in a manner that is consonant with the public interest." A.G.'s Br. at 16. Noting that Painted Bride was not relieved "of its obligation to prove to the Orphans' Court's satisfaction that *Skin of the Bride* was in the public interest," the A.G. determined that the Orphans' Court decree was a "reasonable exercise of the court's discretion," and that there is "no rationale for reversal at this stage." A.G.'s Br. at 18, 25 (emphasis in original).

In the present matter, Painted Bride argues it established the elements required by *Roxborough* and 15 Pa.C.S. §§5547(b) and 5930, and

> [i]t offered competent and credible evidence that [Painted Bride's] board was deliberate and well informed in planning the sale, including in determining that Painted Bride must sell the [p]roperty to continue its mission, marketing the [p]roperty, evaluating and selecting offers, planning a long-term investment strategy, and planning to fulfill Painted Bride's mission without a dedicated physical venue by bringing arts and cultural events to underserved areas of Philadelphia . . . . Notably, the Orphans' Court did not find that Painted Bride had failed to adopt a plan for the sale.

Painted Bride's Br. at 30.

Painted Bride adds that "[t]he Orphans' Court did not find that the sale price was not reasonable, that any manager or member of [Painted Bride's] [b]oard would receive a benefit from the sale, or that the [A.G.] had objected to the transaction." Painted Bride's Br. at 31. Nor did the Orphans' Court determine that "Painted Bride could not carry out its mission without its current physical location." *Id.*

Painted Bride further argues that the Orphans' Court erred in denying its Petition on the basis that it did not establish Buyer's destruction of the Mosaic would *not result* in a "net loss to the public." Painted Bride's Br. at 32. Painted Bride asserts that the Orphans' Court based its ruling on the assumption that its charitable purposes include preserving the Mosaic because its mission involves promoting art. Painted Bride's Br. at 32-33. "Because Painted Bride has no

10

obligation to preserve the [M]osaic, the Orphans' Court erred in denying the Petition on the basis that Painted Bride did not submit evidence of the [M]osaic's artistic and monetary value." Painted Bride's Br. at 40. Painted Bride asserts that "[n]othing in Pennsylvania law suggests the public has an interest in particular assets of a nonprofit entity beyond its interest in ensuring those assets are used to advance its charitable purposes." Painted Bride's Br. at 42. Painted Bride acknowledges that the A.G. represents the public's interest in a nonprofit entity and that its focus is on ensuring the entity's assets are used only to carry out the charitable purposes for which it was founded. Thus, Painted Bride contends, the A.G.'s representation that it did not object to the proposed sale of the Painted Bride property – based on its own, *i.e.*, the A.G.'s, evaluation of Painted Bride's mission and strategic plan, and the proposed sale to Buyer – "negates the notion that the public interest will be harmed by the sale." Painted Bride's Br. at 42.

In addition, Painted Bride argues the Orphans' Court erred in holding it did not present sufficient evidence of the Mosaic's value when, in fact, it offered competent and credible evidence that the Mosaic is in poor and unsafe condition, requires approximately $1 million in repairs, and a search for buyers for the property established the Mosaic has negligible, perhaps negative, economic value. Painted Brides' Br. at 26-27. To further buttress its position in this regard, Painted Bride notes that an offer, which ostensibly involved preserving the Mosaic, was more than $2 million less[9] than the offer that would have likely involved destroying it. *Id*. Painted Bride stresses that "Pennsylvania law does not require an appraisal to determine the value of any particular type of property when, as here, there is

---

[9] This is the offer from Lantern Theater Company (Lantern), which Painted Bride asserts did not *require* the Mosaic be retained. Painted Bride's Br. at 45 n.10.

11

competent evidence of its market value." Painted Bride's Br. at 27.  Further, Painted Bride states that "[t]he Historic[al] Commission rejected the petition to designate the Property as historic, and subjective considerations of 'historic' or 'artistic' value in any event cannot override the hard market evidence that the mosaic has negligible monetary value." *Id*.

In addition, Painted Bride argues that the Orphans' Court erred in holding Painted Bride must establish its entitlement to sell its property by "clear and convincing" evidence.  Painted Bride contends that the normal standard of proof in a civil case is preponderance of the evidence, and nothing in the relevant statutes imposes a heightened burden of proof.  Further, even if the "clear and convincing" standard applies, Painted Bride argues it met this higher standard because it offered clear and convincing evidence that the sale to Buyer would not divert Painted Bride's assets from their intended purposes, but rather would allow Painted Bride "to continue carrying out those purposes by relieving it of the financial burdens of preserving and maintaining a decaying physical plant and structurally unsound [M]osaic, and by giving it funds needed to fulfill its mission." Painted Bride's Br. at 52-54.

Furthermore, Painted Bride argues that the Orphans' Court Decree and Order violates Pennsylvania public policy because it imposes an unreasonable restraint on alienation of its property.  Painted Bride asserts that, by refusing to allow the sale because Buyer may damage or destroy the Mosaic in the redevelopment of the property, the ruling sends the unmistakable message that Painted Bride cannot sell the property unless a prospective buyer agrees to preserve or restore the Mosaic.

12

However, because "Painted Bride can neither afford to repair the [M]osaic nor control whether any buyer will agree to retain it," the Orphans' Court's Decree and Order places an unreasonable restraint on the alienation of Painted Bride's property. Painted Bride's Br. at 55-56.

### III. Zagar's Argument

Zagar asserts that Buyer planned to demolish the Painted Bride building and erect 16 residential units, and that the Mosaic would be destroyed because it could not be safely removed from the walls of the building. R.R. at 299a, 440a. Further, Zagar notes there was a competing bid from the Lantern Theater Company (Lantern), which is, itself, a not-for-profit charitable corporation that has been successfully presenting plays to the public since 1994. R.R. at 581a. Zagar contends that Lantern offered to purchase the building for $2,650,000, agreed to retain the Mosaic, and planned to use the building's 250-seat theater for its productions. R.R. at 300a. Zagar adds that, had the Lantern offer been accepted, the Mosaic would have been preserved, and Painted Bride would have received net proceeds of $2,355,472 at closing. R.R. at 300a, 579a.

Zagar addresses Painted Bride's claims the Orphans' Court erred in requiring it to prove its case by "clear and convincing evidence," by asserting there is no case law which advises on the correct standard of proof in this instance. Zagar contends that "even utilizing a 'preponderance' test does not help Painted Bride, because it offered no evidence at all on the two key issues, *i.e.*, the intrinsic artistic value of the Mosaic, and whether preventing its destruction was justified as in the public interest." Zagar's Br. at 8, 13-15.

13

Zagar asserts that Painted Bride wrongly argues that the A.G.'s lack of an objection to its Petition is the equivalent of a recommendation for approval, and regardless, the A.G.'s opinion is merely advisory, and the Orphans' Court is required to exercise its independent judgment in the matter. Zagar's Br. at 15.

Zagar disputes Painted Bride's argument that its acceptance of the Mosaic did not alter its "mission" and that maintaining the Mosaic was not its responsibility, asserting that he does not contend the Mosaic became part of Painted Bride's stated mission, but instead became "*property committed to charitable purposes.*" Zagar's Br. at 9 (emphasis in original). Thus, the Mosaic became an asset that Painted Bride should have maintained, and which "could not be diverted (in this case, sold and then destroyed) without approval of the Orphans' Court, pursuant to 15 Pa.C.S. §5547." *Id.* Zagar asserts he presented knowledgeable witnesses who opined on the significance of the Mosaic, including such attributes as "a great work of art," "a landmark piece," "historically important to the city,"[10] and "priceless," while, on the other hand, Painted Bride focused only on the cost of repair and maintenance of the Mosaic and disregarded Magic Gardens' commitment to Painted Bride or any subsequent owner to repair and maintain the Mosaic, gratis, and in perpetuity.[11] Zagar's Br. at 10. Zagar further asserts that, with regard to

---

[10] Zagar mentions that Magic Gardens nominated the Painted Bride building and Mosaic for historic designation in 2018, but that Painted Bride resisted the application. He acknowledges that the nomination was ultimately denied later that year by the Philadelphia Historical Commission on a 5-4 vote, with no written opinion. R.R. at 103a-31a.

[11] Zagar specifically states that "Magic Gardens has committed to making all repairs to the Mosaic, now and in perpetuity, without charge to Painted Bride or to any future owner of the
**(Footnote continued on next page…)**

14

Painted Bride's efforts to show the alleged cost of repairs, it repeatedly referred in its Brief to "evidence" that was expressly excluded at trial, and, thus, even as to the cost of repairs, Painted Bride offered no substantive evidence in this regard.

As for Painted Bride's argument that the Orphans' Court Decree is an unacceptable restraint on alienation, Zagar responds that the test is "whether any restraint was 'limited' and 'reasonable,'" arguing that the Orphans' Court Decree was both limited and reasonable because it only disapproved the sale to Buyer. Zagar's Br. at 9-10. However, Painted Bride was at liberty to sell to Lantern or to seek another buyer or buyers. Zagar's Br. at 10. Zagar asserts that "[u]nder the law, the fact that an otherwise reasonable restriction might result in lowering the market value of a property does not give rise to an unacceptable restraint on alienation." *Id*.

For all of the above reasons, Zagar contends that the Orphans' Court Decree and Order should be affirmed.

## IV. Discussion

We preface our discussion below with a review of the salient statutory language at issue in the present matter.

15 Pa.C.S. §5547(a)-(b) states, in pertinent part, as follows:

---

[b]uilding." Zagar's Br. at 5; R.R. at 427a-28a. Zagar further contends that "Magic Gardens is fully capable of executing this commitment, as it employs three full-time salaried preservationists who work with Zagar in repairing all of his outside murals and would do so with regard to the Mosaic. Additionally, 25% of its net revenue is automatically set aside for its Preservation Fund, and that fund held $226,000 at the time of the [Orphans' Court Trial]." Zagar's Br. at 6; R.R. at 168a.

15

(a) **General rule**.--Every nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation, in trust, for the purpose or purposes set forth in its articles.

. . . .

(b) **Nondiversion of certain property**.--Property committed to charitable purposes shall not, by any proceeding under Chapter 59 (relating to fundamental changes) or otherwise, be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors or other body obtains from the court an order under 20 Pa.C.S. Ch. 77 (relating to trusts)[12] specifying the disposition of the property.

15 Pa.C.S. §5547(a)-(b).

15 Pa.C.S. §5930(a) states, in pertinent part, as follows:

(a) **General rule**.--A sale, lease, exchange or other disposition of all, or substantially all, of the property and assets, with or without goodwill, of a nonprofit corporation, if not made pursuant to Subchapter F of Chapter 3 (relating to division), may be made only pursuant to a plan of asset transfer . . . . The plan of asset transfer shall set forth the terms and

---

[12] 20 Pa.C.S. §7740.3 states, in pertinent part, as follows:

(a) **General rule.--**Except as otherwise provided in subsection (b), if a particular charitable purpose becomes unlawful, impracticable or wasteful: (1) the trust does not fail, in whole or in part; (2) the trust property does not revert to the settlor or the settlor's successors in interest; and *(3) the court shall apply cy pres to fulfill as nearly as possible the settlor's charitable intention, whether it be general or specific.*

20 Pa.C.S. §7740.3(a) (emphasis added).

consideration of the sale, lease, exchange or other disposition or may authorize the board of directors or other body to fix any or all of the terms and conditions, including the consideration to be received by the corporation. Any of the terms of the plan may be made dependent upon facts ascertainable outside of the plan if the manner in which the facts will operate upon the terms of the plan is set forth in the plan. The plan of asset transfer shall be proposed and adopted, and may be amended after its adoption and terminated, by a nonprofit corporation in the manner provided in this subchapter for the proposal, adoption, amendment and termination of a plan of merger. A copy or summary of the plan shall be included in, or enclosed with, the notice of the meeting at which members will act on the plan . . . .

15 Pa.C.S. §5930(a).

At the outset, it is important to note that Zagar does not have an ownership interest in the Mosaic or in Painted Bride. He also does not have a contract with Painted Bride which would have limited the latter's ability to use and dispose of the Mosaic in accordance with the law, and as it saw fit in furthering its charitable purposes. While we appreciate the effort that went into the creation of the Mosaic, as well as the interest of some in the Philadelphia art community, and the community generally, in the preservation of the Mosaic, we are focused primarily on whether Painted Bride's actions are consistent with its charitable purposes, in light of the plain reading of the applicable statutes and its Articles of Incorporation.

As the Orphans' Court did not find any irregularities in the process in which Painted Bride's board engaged in deciding whether to accept Buyer's offer, we see no justification for the Orphans' Court to substitute its judgment for that of Painted Bride's board in what is, at its essence, a business decision, especially one

17

with this level of potential impact on Painted Bride's ability to continue to fulfill its charitable purposes in the future. By burdening Painted Bride with responsibility for the perpetual upkeep of the Mosaic, the Orphans' Court has placed an unreasonable restraint on its ability to alienate its property, manage its affairs, and to serve the community as consistent with its charitable purposes. Nowhere in Painted Bride's Articles of Incorporation does it state that Painted Bride has a duty to preserve a building or a particular piece of art, and we do not read in such a responsibility. Perhaps a portable piece of art may have brought with it different responsibilities, but, here, we cannot assume, without evidence, that there was a tacit responsibility for Painted Bride to ensure its building, even if used as a canvas by Zagar, would be preserved in perpetuity. It was certainly foreseeable that it would not.

The Orphans' Court acknowledged that maintaining the Mosaic would be burdensome and require restoration and that due diligence required Painted Bride to give thoughtful consideration to "the large offer made by [Buyer]." Orphans' Court Memorandum at 2-3. The Orphans' Court also determined "[i]f it were not for the fact that the façade was a work of art, then relief as requested would unquestionably be granted." Orphans' Court Memorandum at 3. In denying Painted Bride's Petition, the Orphans' Court determined Painted Bride had the burden of proof but produced no "evidence of the value of the 'Skin of the Bride,' compared with testimony from [Zagar] that its value is priceless." *Id*. The Orphans' Court added "[c]onsidering the dearth of attempts at alternatives, the Court finds that the sale at present is against the stated purposes of this non-profit [c]orporation." *Id*.

While we are not bound by the decision in *Roxborough*, we do acknowledge that in the absence of more authoritative case law, the criteria enunciated for determining the reasonableness of the sale of a nonprofit's property is instructive in the present matter. Here, the Orphans' Court did not determine that the Painted Bride's board acted unreasonably or in any sort of a self-aggrandizing way. In fact, the Orphans' Court ostensibly acknowledged that the board did its due diligence in evaluating the offer from Buyer in light of the alternatives. In fact, Painted Bride's Executive Director of 20 years testified at the trial before the Orphans' Court that "maintaining the building is no longer sustainable" and "[w]e spent multiple years looking at different options starting with what it would take to repair the building in its current condition, to moving to another location, to selling the proceeds – selling the building and using the proceeds for our future vision." R.R. at 281a. In addition, she testified that "[l]arge pieces of the [M]osaic fall off from time to time," and that there is construction netting around the building "for the safety of the people walking around the building." R.R. at 289a. Further, the Executive Director testified that Painted Bride had "received a code violation for the overall condition and two structural issues in the building." R.R. at 290a. She also testified that "the repairs would be close to $4.5 million," and "[i]t's unsustainable for the [Painted] Bride to take on this amount of debt at this time in this cultural climate." *Id*. Additionally, she testified that sale of the building would not change Painted Bride's mission and purpose and that a sale would allow it to have "the resources necessary to go forward to do [its] mission." R.R. at 291a.

Painted Bride's Articles of Incorporation make it clear that it is organized exclusively for the purpose of

19

> **furtherance of the arts and promotion of cultural endeavors** among its members and more particularly in the community **by promoting and participating in painting, sculpture, drama, music, dance and poetry** not for profit but conducive to physical and mental development of its members and the community **and for the purpose of acquiring the necessary property to be used in furthering the purposes of this corporation**.

R.R. at 71a (emphasis added).[13]

Painted Bride's charitable purpose is focused on arts programming, not on property acquisition, maintenance, and preservation. While striving to achieve its purpose may involve the acquisition of property, Painted Bride requires the flexibility and fluidity to dispose of such property, when necessary, to fulfill its mission. In other words, property acquisition and disposal is only incidental to Painted Bride's overall purpose. It is not its *raison d'etre*. It is a means to an end. In fact, it is the sale of its property, including the Mosaic, i.e., the monetizing of these assets, that, at least in theory in the present matter, will enable Painted Bride to better position itself to promote the arts and cultural endeavors in its community. Painted Bride's Articles of Incorporation make no representation about the specific kind or nature of the property it might acquire, and, in fact, makes it clear the acquisition of property is to be used for furthering the purposes of the corporation. To restrict Painted Bride's ability to do so, where there is no contention that the

---

[13] In addition, Painted Bride's "Amended and Restated Bylaws" states its purposes are: "to collaborate with emerging and established artists to create, produce and present innovative work that affirms the intrinsic value of all cultures and celebrates the transformative power of the arts. Through performances and exhibitions, education and outreach, the [c]orporation creates a forum for engagement centered on contemporary social issues." R.R. at 77a.

proceeds will not be used to effectuate its purpose of furthering the arts and promoting cultural endeavors, may, in fact, lead to the ironic outcome of limiting Painted Bride's ability to promote the arts, broadly, in the quest to save one particular work.

While we appreciate that Zagar offered evidence that the Mosaic is "priceless," we also note the value of art is often in the eye of the beholder. Painted Bride had a firm offer from Buyer, which established the value of the property in question to that particular purchaser. As Painted Bride noted, this was approximately $2 million more than the next best offer, which may or may not have ultimately preserved the Mosaic. Thus, in this regard, Painted Bride *did* provide competent evidence of the value of the property, including the Mosaic – no matter what the intent of the Buyer in terms of preserving (or not preserving) the Mosaic. We reiterate here that Zagar did not have a contractual agreement in place with Painted Bride that committed Painted Bride to the perpetual existence of the Mosaic, nor did Zagar produce evidence of any agreement that provided him with an ownership interest in the property or in any way limited Painted Bride's ability to dispose of the Mosaic and/or the property on which it was installed.[14]

---

[14] Further, we believe it is important to reiterate here that an attempt was made to designate the building as an historic property in 2018. This could have preserved the Mosaic for the community. However, such attempt was expressly rejected by the Philadelphia Historical Commission.

In regard to the A.G.'s position in this matter, we acknowledge its position that it sees no reason the Orphans' Court determination should be disturbed. However, it is also noteworthy that it did not take a position during the litigation itself, and thus, it would not be unfair to infer tacit approval of the sale of the Painted Bride property. If the A.G. believed that sale of the property and the potential destruction of the Mosaic would have resulted in an inconsistency with Painted Bride's mission as a charitable non-profit, it could have, and should have, said so. Instead, in its **(Footnote continued on next page…)**

Given Zagar's lack of ownership in the Mosaic and lack of any contractual agreement with Painted Bride that the Mosaic would be preserved indefinitely, along with the lack of any indicia that Painted Bride otherwise had an obligation in its Articles of Incorporation, or in law, to maintain the Mosaic, the Orphans' Court inappropriately affixed an impermissible restriction on Painted Bride's ability to effectuate the sale of its property to Buyer.

As noted above, 15 Pa.C.S. §5547(a) states, in pertinent part, that "a nonprofit corporation incorporated for a charitable purpose or purposes may take, receive and hold such real and personal property as may be given, devised to, or otherwise vested in such corporation . . . for the purpose or purposes set forth in its articles." 15 Pa.C.S. §5547(b) states, in pertinent part, that "[p]roperty committed to charitable purposes shall not . . . be diverted from the objects to which it was donated, granted or devised, unless and until the board of directors . . . obtains from the court an order under 20 Pa.C.S. Ch. 77." Zagar argues that the Mosaic became "property committed to charitable purposes." Zagar's Br. at 16. However, given the lack of clarity about who approached whom to initiate the installation of the Mosaic, and/or the reasons for it, it is at least arguable that Zagar undertook the Mosaic project simply as a means to promote his art. In light of this latter suggestion, we note that Zagar further asserts that *all* property donated (presumably regardless of the motivation for it) to a charitable, non-profit constitutes property "committed

September 16, 2019 letter to the Orphans' Court it specifically stated: "[the A.G. has] no objection to the relief requested in the Petition." R.R. at 617a.

22

to charitable purposes." Zagar's Br. at 16-17. But, Zagar's position does not overcome the directive of 15 Pa.C.S. §5547(a) that the property the nonprofit receives is "for the purpose or purposes set forth in its articles." 15 Pa.C.S. §5547(a). In this case, Painted Bride's Articles state that its purpose is "**furtherance of the arts and promotion of cultural endeavors** among its members and more particularly in the community **by promoting and participating in painting, sculpture, drama, music, dance and poetry** not for profit but conducive to physical and mental development of its members and the community . . . . (emphasis added)." R.R. at 71a. Here, it is the sale of its property, including the Mosaic, that will result in the liquidity necessary for Painted Bride to continue to fulfill its charitable purpose. When it denied Painted Bride's Petition, the Orphans' Court read into Painted Bride's Articles of Incorporation a duty to the Mosaic itself – a duty that does not exist. In doing so, the Orphans' Court committed an error of law that must be reversed.

## V.    Conclusion

For the foregoing reasons, we reverse the Decree and Order of the Orphans' Court.

_____
J. ANDREW CROMPTON, Judge

23

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Painted Bride Art : 
Center, Inc., non-profit corporation : 
 : No. 1642 C.D. 2019
 : 
Appeal of: Painted Bride Art : 
Center, Inc. : 

# **O R D E R**

**AND NOW**, this 20th day of October 2020, the decree of the Philadelphia County Court of Common Pleas, Orphans' Court Division, is **REVERSED**.

_____
J. ANDREW CROMPTON, Judge